[Civ. No. 2758. Fourth Dist.—July 7, 1941.]

BUCK JONES et al., Respondents, v. UNIVERSAL PIC-
TURES COMPANY, INC. (a Corporation), Appellant.

Loeb & Loeb and Herman F. Selvin for Appellant.

Sherman & Sherman and Glenn M. Still for Respondents.

BARNARD, P. J.—This is an appeal from a judgment decreeing the reformation of a written contract. The parties stipulated as to the amount due to the plaintiff if reformation was granted and the only question here raised is as to the validity of the decree granting reformation.

The action which was filed on July 8, 1938, relates to a contract dated March 31, 1934, and to a renewal thereof dated about March 1, 1935, extending the arrangement for another year. Both of these agreements were assigned by Buck Jones to Buck Jones Productions but, for convenience, we will refer to Buck Jones as the respondent.

Shortly prior to March 31, 1934, the respondent and his agent, a Mr. Vincent, had certain negotiations with Mr. Henigson, an authorized representative of the appellant, which led to the execution of the original contract in question. During these negotiations it was agreed that the respondent, during the ensuing year, would produce from six to eight motion pictures, that the appellant would distribute these pictures, that the respondent would be paid a fixed sum per picture and also a percentage of the net profits, and, among other things, it was agreed that the appellant might deduct the actual cost of its advertising in connection with each picture produced, with the maximum fixed at $5000 per picture. A contract was then prepared by the appellant and submitted to Vincent, to whom the respondent left the details of the

transaction. When the respondent was asked to sign the contract he asked Henigson if it was "the contract as we talked it over," and being assured that it was he signed the document without reading it. About a year later the contract was renewed for another year. At the expiration of that year the relationship was continued for a third year by the execution of a new contract. During all of this time and up to October 30, 1937, the appellant accounted to the respondent monthly, each statement listing the amounts actually expended by the appellant for advertising purposes. On October 30, 1937, after the relationship between the parties had been severed as far as the production of any more pictures was concerned, the appellant sent the respondent a statement covering the entire period and making a flat charge against the respondent of $5000 for advertising in connection with each picture produced and distributed.

Paragraph 8 of the original contract dated March 31, 1934, so far as material here, reads as follows:

"All advertising, publicity and/or exploitation in connection with each photoplay shall be handled by Universal. Universal shall expend and advance such sums as it may deem necessary for trade paper, billboard, magazine, cuts, campaign book and/or advertising of the photoplays to be produced and distributed hereunder, and shall be entitled to deduct and retain for its own benefit from the gross proceeds to be derived from said photoplays the sum of Five Thousand Dollars ($5000.00) per photoplay as its advertising charge."

The decree appealed from ordered this provision reformed so as to provide that the appellant might deduct its actual cost of advertising, not exceeding $5000 for each picture.

The record discloses the following evidence material to this controversy. The respondent testified that he had a conversation with Mr. Henigson, at which Vincent was present, some three weeks before March 31, 1934; that Henigson stated that only the actual cost of advertising would be charged against each production and that he told Henigson that was all right; that he left the details of the contract to Vincent; that Henigson later phoned him and asked him about signing the contract; that he asked Henigson whether the contract "is the contract as we talked it over"; that Henigson said it was and he replied, "That is good enough for me"; and that he then signed the contract without reading it. With reference to

the execution of the original contract Mr. Muhl, a representative of the appellant, testified that the original draft of the contract which was submitted contained the same provision regarding the costs of advertising which appears in the contract as finally executed, that an attorney acting for Vincent wanted this provision clarified as to whether the appellant would deduct a flat sum of $5000 or the actual cost of the advertising not exceeding $5000, and that he took this up with Henigson who said "that we did not want to give it if we did not have to; but if we had to give it in connection with the closing of the contract it would be o.k. to do so." He further testified that he later discussed the terms of the contract with Vincent and his attorney, and that he could not recall any discussion as to the charge for advertising but that "it was not changed, however." He then testified that at the time the respondent signed the contract there was no discussion as to its terms and no one read it. The attorney who represented Vincent testified that when he read the first draft of the contract he told Vincent that the provision as to advertising charges was ambiguous, and that when he went over the redraft of the contract he made a note to the effect that the ambiguity still existed and that he thought it might be construed as permitting the appellant to deduct $5000 for advertising services. There is evidence that this note was sent to Vincent's office but there seems to be no evidence that he read it.

It appears without contradiction that the appellant sent monthly statements in which the cost of advertising only was charged against the respondent. The respondent testified that in 1935 the appellant asked him about a renewal of the contract on the same terms, to which he agreed, and that the appellant wrote him a letter which appears in evidence. This letter refers to the original contract and provides for an extension of one year with a few changes which are not material here.

The respondent testified that in 1936, when the question of another agreement came up, his attorney, Mr. Sherman, who had taken over his business, called his attention to the fact that the provision of the original contract relating to the charge for advertising did not agree with what the respondent had told him the agreement was, and that he instructed him to straighten the matter out. Mr. Sherman testified that

about the first of March, 1936, he took this matter up with Mr. Muhl telling him that the advertising provision in the original agreement was ambiguous, that the respondent had understood that it was to be the actual cost of advertising with a maximum of $5000, that the appellant had been accounting on that basis at all times and that he wanted that provision "clarified", that Muhl replied that he did not see any objection to that, that this was his understanding, that the appellant had been accounting on the basis of actual cost of advertising, and that Muhl further stated he would like to discuss the matter with his superior, Mr. Koenig. Shortly thereafter, Muhl wrote a letter with reference to the new contract in which he said: "We shall clarify that the cost only of advertising may be charged to each picture but not in an amount exceeding $5000." Mr. Sherman testified that a little later he had a talk with Mr. Koenig in which he told him the original contract was "a little ambiguous on whether $5000 for a picture should be charged for advertising against Mr. Jones' production, or whether it should be the actual cost of advertising with a limitation of $5000," and that Mr. Muhl had agreed to clarify the situation, to which Koenig replied that this was satisfactory. The new contract then entered into contained a paragraph relating to the cost of advertising which follows the exact language of the one used in the original contract except that the latter part thereof provides that the appellant may retain the amount actually expended by it for advertising, not exceeding the sum of $5000 in connection with each picture. The appellant continued making monthly statements in which the actual cost of advertising only was charged to respondent, not only in connection with pictures produced under the new contract of 1936, but also in connection with those which had been produced under the original contract and its renewal in 1935. This continued until October 30, 1937, when production under all contracts had ceased, at which time a demand upon the respondent for a flat charge of $5000 for advertising in connection with each picture produced under the first two contracts was for the first time made.

 There is little, if any, conflict as to the facts. The appellant's main contention is that the court's finding that there had been a mistake is not supported by the evidence since it appears that Vincent was the agent of the respondent and that Vincent was aware of the contents of the contract

before it was signed. It relies upon the well established principle that knowledge on the part of an agent must be imputed to his principal, and contends that no mistake appears in view of the agent's knowledge.

In spite of the rule relied upon this result does not follow under the circumstances here appearing and a large part of the evidence supports the court's findings to the effect that an ambiguity existed, that the respondent was mistaken as to the terms set forth in the written contract, that the appellant at least knew that he was laboring under that mistake, and that the true meaning of the contract, as agreed upon by the parties, was that the cost of advertising only should be charged against the respondent.

There can be little doubt that the provision of the contract in question was ambiguous. It is first provided therein that all advertising is to be handled by the appellant and that the appellant shall expend "and advance" such sums as it may deem necessary for that purpose in connection with pictures to be produced and distributed. It is then provided that the appellant may deduct from the gross proceeds the sum of $5000 for each picture as its advertising charge. While the latter provision, standing alone, would establish a fixed charge of $5000 for advertising in connection with each picture, to accept that as its meaning would do away with the necessity for any other provision, and would render largely meaningless the first and larger part of the provision in question. This violates the well established rule that each provision of a contract should be given a meaning where possible. Moreover, if a fixed charge was intended no reason appears for providing that the appellant might expend for advertising such sums as it deemed necessary, and no reason for referring to the money thus spent as an "advance." Not only does it in fact appear that this provision was ambiguous but it was so considered by the attorney for Vincent, by Mr. Sherman when he was brought into the matter and by Mr. Muhl, who pointed out that they had been interpreting the contract upon the basis of charging for the actual cost of the advertising.

If we assume that the respondent's agent, Vincent, had read the contract and knew the terms therein used, and if we further assume that his attorney had advised him that this provision was ambiguous, such facts are not conclusive here.

There is nothing to show that he knew the exact meaning of the language used and the ambiguity still existed in spite of such knowledge as he possessed. There can be no question of the intention of the parties. Muhl testified that his superior told him to yield the point only if he had to, and that there was no further discussion of the matter between that time and the signing of the contract. On the other hand, the respondent, before he signed the contract, took it up with Mr. Muhl's superior, with whom he had made the agreement, and was assured that the written agreement was in accordance with the terms of the oral agreement. Relying upon that assurance the respondent signed the agreement as written.

Under such circumstances, the interpretation placed upon the contract by the parties is most important. For three and one-half years thereafter the appellant accounted monthly to the respondent, charging him only with the actual cost of the advertising and paying him his share of the profits on that basis. The appellant argues that these monthly accounts are without significance, that money was continually coming in from the distribution of the pictures, and that there was no reason for charging the respondent the full amount of $5000 on each picture until there was a final accounting. This ignores the plain provision of the contract that the respondent was to share only in the net profits after certain charges were paid and deducted. Under appellant's view of the matter the respondent would be entitled to no part of such profits until the entire $5000 had first been deducted. In view of the actual situation, the accounting to the respondent from month to month on the basis of the cost of the advertising, and the corresponding payments to him of his share of the net profits, are most significant as to the interpretation placed upon this clause of the contract by the appellant itself. Moreover, when the ambiguity in the original contract was pointed out by the respondent's attorney in March, 1936, in connection with a renewal arrangement, the appellant called attention to the fact that it had been accounting on the basis of the cost of the advertising, and all parties talked of clarifying the matter rather than of changing it only for the future. The general circumstances disclosed by this evidence strongly indicate an intention on the part of all parties to clarify the matter with respect to the original contract and its first renewal, as well as in connection with the new contract which was then being

entered into, and it seems quite probable that this was done with a view of inducing the respondent to enter into that new contract.

The findings of the court in this connection, and the reformation of this contract in order to conform with the real agreement of the parties, are sufficiently sustained by the evidence under the decisions in this state, only a few of which need be cited. (*Sullivan* v. *Moorhead,* 99 Cal. 157 [33 Pac. 796] ; *First National Bank* v. *Bowers,* 141 Cal. 253 [74 Pac. 856] ; *Kales* v. *Houghton,* 190 Cal. 294 [212 Pac. 21] ; *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal. (2d) 740 [47 Pac. (2d) 273] ; *Siem* v. *Cooper,* 79 Cal. App. 748 [250 Pac. 1106] ; *Robinson* v. *Arthur R. Lindburg, Inc.,* 140 Cal. App. 669 [35 Pac. (2d) 1057].)

Under the views above expressed it becomes unnecessary to consider the appellant's further contentions that the court's findings of fraud justifying a reformation of the contract and of estoppel as against the appellant are not sustained by the evidence and the existing facts. We may add, however, that we are far from convinced that the judgment could not be supported on one or both of these grounds.

Appellant's final contention is that the cause of action was barred by the statute of limitations and that the court erred in failing to make a direct finding on that issue. It is argued that the mistake or fraud relied upon took place on March 31, 1934, and March 1, 1935, the dates on which the first and second contracts were executed, and that the three-year limitation provided by sec. 338, subd. 4, of the Code of Civil Procedure had expired when this action was begun on July 8, 1938. It is further argued that no excuse could exist for a later discovery of the mistake since the means and opportunity for discovering it were always available to the respondent in that he could have read the contract at any time.

The court found that on October 30, 1937, the appellant presented a claim for the difference between the actual cost of the advertising and the sum of $5000 per photoplay, and that this was the first notice or knowledge that the respondent had that the appellant was seeking or endeavoring to claim a flat charge of $5000 per picture for this purpose in lieu of the actual costs thereof. The appellant argues that this finding is not supported by the evidence since the respondent him-

self testified that his attorney called the matter to his attention in March, 1936, just prior to the execution of the third contract. It would make no difference here, so far as the statute of limitations is concerned, if discovery was actually made in March, 1936. However, the court's finding is amply sustained by the evidence. While in March, 1936, respondent's attorney called his attention to the fact that an ambiguity in this regard existed in the contract, he then requested his attorney to straighten the matter out. A representative of the appellant at that time stated that his understanding was that the charge was to be upon the basis of the actual cost, that returns had been made on that basis, and that they would be glad to clarify the matter. The matter was not only clarified in the third contract but the appellant continued thereafter to make returns under the first and second contracts on the basis of the actual cost of the advertising. It was not until October 30, 1937, that any different course was pursued and the court correctly found that at that time the respondent first obtained notice or knowledge that the appellant had any intention of charging for the advertising on any other basis than that of its actual cost.

Under the circumstances here appearing, including the ambiguity in the contract and the conduct of the appellant in connection therewith, no duty rested upon the respondent to take any steps which might have led to the discovery of a fraud or mistake. (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal. (2d) 501 [86 Pac. (2d) 102] ; *Tarke* v. *Bingham,* 123 Cal. 163 [55 Pac. 759].) ▮ It follows that the action was not barred by the statute of limitations, and that the failure to make a direct finding on that issue was not prejudicial to the appellant. (*City of Los Angeles* v. *Dawson,* 139 Cal. App. 480 [34 Pac. (2d) 236] ; *Woodham* v. *Cline,* 130 Cal. 497 [62 Pac. 822] ; *Reiniger* v. *Hassell,* 216 Cal. 209 [13 Pac. (2d) 737].)

The judgment is affirmed.

Marks, J., and Kelly, J., *pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1941.