[Crim. No. 6713.   Second Dist., Div. Two.   Dec. 17, 1959.]

THE PEOPLE, Respondent, v. ROBERT JESUS CASTRO, Appellant.

Robert Jesus Castro, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—An indictment was returned against the defendant in two counts charging violation of section 11500, Health and Safety Code: count I, possession of heroin, and count II, possession of marijuana. He was also charged with three prior convictions and with having served terms of imprisonment therefor. He admitted the prior convictions. Trial by jury having been duly waived, defendant was found guilty by the court on both counts and sentenced to the state prison for the term prescribed by law. He has appealed from the judgment of conviction.

Officer Aguirre, of the Los Angeles Police Department who had been assigned to the Narcotics Division for a number of years, was informed by Sergeant Moen, of the Glendale Police Department, that defendant was selling narcotics at 4010 Baywood Street, Los Angeles. Moen told Aguirre that he had received this information from an informant but he did not disclose the informant's identity.

On October 15, 1958, at approximately 9:45 p. m., Officer Aguirre, accompanied by several other officers, went to the above address. Upon approaching the door at 4010 Baywood, Aguirre noticed that there was a screen door which was closed. Behind this door was a large wooden door which was open all the way to the inside wall. The officer was able to see inside the room through the screen door. He there observed a table lamp on a combination radio-television set. This lamp contained a red light which illuminated well the top of the combination set and the area around it. Defendant was observed seated on a sofa. The officer heard music coming from the room. Further observation revealed that it was coming from the record player. On top of the combination set he saw a cellophane bag which contained a number of small pieces of balloons in the shape of a bindle. These balloons appeared to have the shape of capsules within them, and were recognized by the officer as common devices for the use or preparation and sale of narcotics. Aguirre had had special training in the detection of narcotics and the manner in which they were packaged and sold, and was also familiar with the use of toy balloons in the packaging and selling of narcotics. It was his experience that they were used for the purpose of packaging

gelatin capsules, making smaller bindles for the purpose of both protecting them from moisture and segregating them in different quantities so that they could be easily sold on the street. This manner of packaging also made it easy to dispose of the narcotics instantly by swallowing them, as the balloons would prevent the destruction of the narcotics and their assimilation into the system. After making these observations, the officer rapped on the wooden portion of the door with the tips of his fingers and called out, "Bobby." This was the type of signal generally used by persons engaged in the narcotics trade. Defendant rose from the sofa, came to the door and inquired of the officer what he wanted. Aguirre identified himself as a police officer and informed defendant that he was under arrest for narcotics violations. Defendant again inquired as to what the police wanted with him. Aguirre repeated that they were police officers; that he was under arrest, and demanded that he open the door. Defendant responded by saying that he had done nothing, stepped back and slammed the front door shut. Officer Aguirre forced the doors and entered the room just as defendant was going toward the combination set. As defendant reached the set the officer grabbed him by the arm and pulled him back. The officer then recovered the cellophane bag with its bindle-shaped pieces of balloons, which contained capsules of heroin. Upon searching the premises, Officer Aguirre discovered a brown paper sack containing marijuana in the combination bedroom-dining room behind a picture on a cupboard.

Defendant offered evidence that the only light in his living room was a 25-watt bulb; that the lamp which contained it was not on the combination radio-television set but was on a table next to the front door; that from the side of the room opposite the combination set it was not possible to see any objects located on top of it. Defendant contends that the narcotics found in his home were inadmissible on the theory that they had been obtained under an illegal search and seizure, since the officers had no probable cause to arrest him. He argues that there was no probable cause for his arrest since the reliability of the informant was not shown, and that the officers should have obtained a search warrant as there was no pressing emergency for the arrest. There is no merit whatever in either of these arguments.

The reliability of the informant is not an issue where there is probable cause for the arrest apart from the informa-

tion supplied by the informant. (*People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19].) ▮ The information furnished by the informant merely served to point the finger of suspicion at the defendant. Following the lead thus provided, the officer made his own observations by looking through the front door. From this vantage point, and based upon his training and experience and familiarity with the preparation of narcotics for sale, he observed a cellophane bag on the top of the radio-television set that appeared to him to contain bindles and capsules in pieces of balloons, similar to the customary packaging of narcotics for sale. Observations thus made from outside the house violated none of defendant's constitutional rights. (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Wright,* 153 Cal.App.2d 35, 39 [313 P.2d 868] ; *People* v. *Hen Chin,* 145 Cal.App.2d 583, 586 [303 P.2d 18] ; *People* v. *Moore,* 140 Cal.App.2d 870, 871 [295 P.2d 969].) The officer was entitled to act upon what he saw and to arrest the defendant (Pen. Code, § 836, subd. 1) ; *People* v. *Martin, supra,* for his observations revealed probable cause to believe that a felony was being committed.

Appellant contends that the light in the room was located at a place different from that testified to by the officer, and that because of the location of the light and its low candle power it was impossible for the officer to discern the cellophane bag on the radio-television set and the shape and appearance of the items in it. This was, of course, a question of fact for the trial judge's determination. He has resolved the conflict in the evidence on this point adversely to the defendant, and this is binding upon appeal.

Since the officer had reasonable cause to believe that defendant was committing a public offense in his presence, the officer had the right, under the express authority of Penal Code, section 836, subdivision 1, to arrest him without a warrant.

Since there was probable cause to make the arrest, the officers were authorized to search not only the defendant but the premises under his control. (*People* v. *Dixon,* 46 Cal.2d 456, 459 [296 P.2d 557] ; *People* v. *Guy,* 145 Cal.App.2d 481, 489 [302 P.2d 657].)

▮ The appellant also objects to the fact that the officer forcibly entered his home. It is clear, however, that after identifying himself, the purpose of his business and demanding admittance, the officer was entitled to break into the suspect's home upon refusal of admission. This is expressly authorized

by Penal Code, section 844.* Here the defendant slammed the door in the officer's face and made a hasty retreat toward the combination set on which the contraband was located. In the circumstances, appellant has no justifiable complaint on this score.

Appellant's reliance on *People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776], is misplaced, because in that case the court held that there were no observations of the police officer which, independently, would establish probable cause. The court pointed out that the arrest and search would have been proper had the officer's independent observations revealed probable cause that a felony was being committed. However, in evaluating the officer's observations, the court held that they revealed no such probable cause. All that the officer observed in that case was an ordinary brown paper bag. In the instant case, Officer Aguirre observed a cellophane bag which contained items shaped like capsules, wrapped in bindles, which he recognized as a common method of packaging narcotics.

It is clear that the arrest was legal, the search proper, and the contraband thus recovered was admissible in evidence. (*People* v. *Coleman,* 134 Cal.App.2d 594 [286 P.2d 582].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1960.

---

*Penal Code, § 844, provides:

"To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."