[Crim. No. 7454.   Second Dist., Div. Two.   Mar. 21, 1961.]

THE PEOPLE, Respondent, v. JAMES CHARLES AMOS, Appellant.

James Charles Amos, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John F. Foran, Deputy Attorneys General, for Respondent.

ASHBURN, J.—Convicted of possession of heroin in violation of section 11500, Health and Safety Code, defendant appeals from the judgment. He was also charged with three prior felony convictions, viz., attempted burglary, manslaughter and violation of section 11500, Health and Safety Code. During the trial defendant expressly admitted all of said charges of prior convictions. At the time of sentencing counsel for defendant moved to strike the priors, the deputy district attorney pointed out that all of them were admitted in open court and, doubtless refer to section 11718, Health and Safety Code,[1] declined to consent. The court then found to be true the allegation of a prior conviction of section 11500, expressly stated that it made no finding upon the other two priors and sentenced defendant to state prison for the term prescribed by law. Thus defendant received the minimum sentence permitted under the statute, assuming that such procedure is sanctioned by law. (*Cf. People* v. *Powell,* 187 Cal.App.2d 709, 713 [10 Cal.Rptr. 116].) If not so sanc-

---

[1]Said section, first enacted in 1959, reads as follows: ''In any criminal proceeding for violation of any provision of this division no allegation of fact which, if admitted or found to be true, would change the penalty for the offense charged from what the penalty would be if such fact were not alleged and admitted or proved to be true may be dismissed by the court or stricken from the accusatory pleading except upon motion of the district attorney.''

tioned appellant could not complain for the error, if any, is in his favor.

Appearing in propria persona he argues that the evidence is insufficient to support the finding of guilty and that the heroin which forms the basis of his conviction was inadmissible because obtained through unlawful search and seizure. There is no merit in either of these contentions.

The claim of insufficiency of the evidence is but an invitation to this court to reweigh the proofs. This we cannot do. *People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911] : "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. . . . 'The court on appeal "will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground" of insufficiency of the evidence, "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict." If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' " Viewing the evidence most favorably to respondent's case and remembering that the trial judge "could have accepted portions of defendant's testimony and statements, disbelieved other portions" (*People* v. *Matlock*, 51 Cal.2d 682, 695 [336 P.2d 505]), the facts are as follows:

At about 11 p. m. on June 29, 1960, defendant was walking south on the east side of Burlington Avenue near Eleventh Street, in Los Angeles; a police car slowly drove up behind him; he glanced back at it, a furtive glance. Officer Pryor thus explained the term "furtive glance," as used by him: "I define to be a furtive glance when a person will glance

and then look away quickly and then starts to peek back over his shoulder again. That to me would be, I would think, furtive.'' Having passed defendant the police backed their car and stopped him. As they got closer he seemed to be extremely nervous. This was in a vicinity where burglaries occur ''every once in a while,'' and the officers thought he might be a burglar. They had with them a report upon a ''rubber ball strangler'' for whom the police were searching as the result of strangulation of an elderly woman; they also had a composite drawing of that suspect which the officers (Pryor and Millsap) thought defendant resembled. Asked for identification he showed them a property slip disclosing that he had been arrested for petty theft. The officers placed him in their car while they checked with headquarters to see if he was wanted. ▉ He was not arrested at that point; merely detained for the purpose and during the time of making reasonable inquiries; such a detention does not in and of itself amount to an arrest. (See *People* v. *King*, 175 Cal.App.2d 386, 390 [346 P.2d 235]; *People* v. *Anushevitz*, 183 Cal.App.2d 752, 754 [6 Cal.Rptr. 785]; *People* v. *Galceran*, 178 Cal.App. 2d 312, 315-316 [2 Cal.Rptr. 901].) ▉ Although the police had not yet mentioned the matter to him, defendant began to talk about the ''rubber ball strangler'' as soon as he got into the car. He constantly talked about it and was so nervous he was asked what was wrong, replying, ''Oh, nothing. You are just police officers and that shakes me up.'' Defendant fit so well the description the police had of the strangler that, although they had no warrant, they arrested defendant and took him to Central Station to see if he should be booked for the strangulation crime.

Before placing him in the automobile the police frisked him for weapons but found none; neither did they then discover the box of heroin which later came to light. When the police car arrived at Central Station Officer Pryor, who was seated on the left side of the rear seat, alighted through the left door. His brother officer who was the driver also got out on that side. Defendant was seated on the right side of the rear seat. He tried to follow Pryor out the left door but was told to stop, that he would be taken out on the right. This car had been drawn from a police car pool about 4:30 p. m. of that day. Only one other person had been in it, a rape victim; Officer Pryor testified that when he let her out of the car ''there was nothing in the back seat when she left.'' When he opened the right rear door for defendant to alight

he saw a small green and yellow box, which later proved to be a container for heroin, sitting on the ledge or frame of the door. It could not have been there while the door was closed, for the act of shutting the door would have mashed it or have driven it inside. The officer saw defendant kick it as he got out and saw it fall on the pavement some 4 to 5 feet from the rear wheel. Pryor, who had heard defendant say he had some pills he took for his eyes and nose, said to defendant: "Just a minute. You dropped your pills." He said: "Those aren't mine. They must be yours because I never seen them before. They aren't mine." Pryor: "Oh, . . . they aren't yours? . . . They weren't there before you got in the car." Defendant: "I don't know but they aren't mine. They must be yours. You found them and that is where you found them right on the ground there. That's where you found them. You didn't get them off of me." Pryor: "They weren't there before you got in the car, so if they fell out of the car it stands to reason, I didn't have them, my partner didn't have them, my partner was not sitting back there, so I would say they were yours." Pryor picked up the box and opened it, seeing capsules of some dirty white powdery substance (which later proved to be 64 capsules of heroin); at this time the defendant became more vehement in his denials of anything concerning the box, and Pryor said to him: "It seems you had a reason to be nervous. Maybe you aren't the murderer but it is quite likely you are carrying heroin." When defendant arrived at the homicide bureau the officers in charge said they had better suspects, and defendant was then taken to the narcotics bureau. As a witness at the trial he admitted he had previously used heroin but asserted he had taken a cure in the preceding February.

Of course defendant's testimony was that he did not possess, nor kick, nor ever see the box of narcotics before the officers found it on the ground. He also contradicted various aspects of the police testimony, e.g., claiming that the search of his person was thorough enough to have disclosed the box had it been on his person, emphasizing differences between his appearance and that of the rubber ball strangler; said he saw officers passing the picture back and forth and explained to them that someone told him he looked like that bandit and that that made him nervous; claimed the box was lying on the ground when the police opened the car door and asked if the pills were his. The court rejected his testimony and accepted

that of Officer Pryor whose testimony, above summarized, is sufficient to sustain the implied findings that defendant had the pills in his possession and surreptitiously placed them on the door frame and kicked them onto the ground. The evidence is amply sufficient to support the finding of guilt.

The officers had no search warrant but that is immaterial for the claim of unlawful search and seizure is without substantial support in the evidence. When the car door was opened for defendant to alight the officer saw the box of narcotics on the ledge or frame of the door. Immediately thereafter he saw defendant kick it onto the street. The fair inferences are that defendant had it in his possession at the time he was searched and had it so concealed that it was not discovered when he was frisked for weapons; that he surreptitiously placed it on the door frame as the door was opening and then kicked it out because he knew its contents and was anxious to be rid of it.

Of course the rule is ''that to establish unlawful possession of narcotics it must be shown that the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character.'' (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].)

Circumstantial evidence may be sufficient for the purpose (*People* v. *Magdaleno,* 158 Cal.App.2d 48, 51 [322 P.2d 89]), and the Redrick opinion says, at page 289: ''The credence and ultimate weight to be given the evidence of the various particular circumstances are of course for the trier of fact, and 'It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' (*People* v. *Robillard* (1960), 55 Cal.2d 88, 93 [1, 2] [10 Cal.Rptr. 167, 358 P.2d 295].)

''The rule that 'to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion' . . . is primarily for the guidance of the trier of fact. Such rule would be applicable to appellate review of a conviction only where, giving to each circumstance in evidence all the legal effect toward guilt which it could support, it would still appear that a rational conclusion of innocence was not excluded. . . .

■ "The existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it 'be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' " The evidence at bar fills to the full the measure prescribed by the authorities for determining circumstantially the issue of possession and knowledge.

■ Defendant's placing the box of narcotics in plain sight and abandoning it through kicking it to the pavement precludes any successful claim of search and seizure. There remained no basis for either claim. ■ *People* v. *Spicer,* 163 Cal.App.2d 678, 683 [329 P.2d 917] : "Since the officers observed respondent drop what appeared to be a 'homemade' cigarette and then attempt to flee, there was no search or seizure in this case such as is contemplated by law. As was said in *People* v. *West,* 144 Cal.App.2d 214, 219, 220 [300 P.2d 729] : 'A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a "search." ■ A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender. (79 C.J.S., 775-776.) '

"That to observe that which is open and patent is not a search was the holding in *People* v. *Martin,* 45 Cal.App.2d 755, 762 [290 P.2d 855] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 561 [298 P.2d 896]. Analogous to the situation with which we are here concerned is the case of *People* v. *Edwards,* 142 Cal.App.2d 419, 421 [298 P.2d 664], wherein it is said : '. . . Furthermore, here the appellant voluntarily dropped the bindle of heroin to the floor. Hence there is no question of any illegal search involved. After appellant's attempted flight the officer was entitled to pick up the bindle from the floor as part of his police investigation.' (See also *People* v. *Sterling,* 154 Cal.App.2d 401, 405-406 [316 P.2d 405].) " To same effect are, *People* v. *Edwards,* 142 Cal.App.2d 419, 421 [298 P.2d 664] ; *People* v. *Sterling,* 154 Cal.App.2d 401, 405 [316 P.2d 405] ; *People* v. *Ambrose,* 155 Cal.App.2d 513, 522 [318 P.2d 181] ; *People* v. *Escobosa,* 179 Cal.App.2d 751, 754 [3

Cal.Rptr. 917]; *People* v. *Robles,* 183 Cal.App.2d 212, 214-215 [6 Cal.Rptr. 748]; *People* v. *Piedra,* 183 Cal.App.2d 760, 761-762 [7 Cal.Rptr. 152].

Judgment affirmed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 16, 1961.

*Assigned by Chairman of Judicial Council.