[Crim. No. 8471.   Second Dist., Div. Two.   Feb. 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK
HARRIS, Defendant and Appellant.

Cary G. Branch for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—After a trial by the court defendant was convicted of violation of section 11530 of the Health and Safety Code, possession of a narcotic, marijuana. Defendant appealed the judgment of conviction on the sole ground that the evidence introduced against him was illegally obtained, and therefore that the court erred in admitting the evidence.

"Viewing the evidence most favorably to respondent's case and remembering that the trial judge 'could have accepted portions of defendant's testimony and statements, disbelieved other portions' (*People* v. *Matlock,* 51 Cal.2d 682, 695 [336 P.2d 505]), the facts are as follows." (*People* v. *Amos,* 190 Cal.App.2d 384, 387 [11 Cal.Rptr. 834].)

Officer Briggs was conducting a bookmaking investigation and went to The Fashion Cleaners at 1312 West 39th Street on the basis of information that he had previously received. After listening from the outside for approximately ten minutes, he entered the shop and identified himself to Mr. Govan, the proprietor of the Cleaners. The officer told Mr. Govan that the police had a complaint that bookmaking was being conducted on his premises and asked him if he knew anything about it. Mr. Govan stated that he did not and, when asked, granted the officer and his partner permission to search the premises. Officer Briggs and Mr. Govan then walked toward the rear of the premises. There, standing between two racks of clothes, Briggs observed appellant, who appeared to be changing his clothes at the time. The officer approached him and asked him for his identification. The reason for this was that he had observed some clothes lying on a table approximately 2 feet away from appellant and in the pocket of a shirt on the table he observed a package of cigarette papers; they were "tiptop Cigarette Papers," were in a package approximately 3 inches by an inch and a half, and were red in color with gold or white writing on them. In the past the officer had observed the unlawful use of such cigarette papers. He had arrested bookmakers who had written on such paper. Also, part of the information which he had received concerning the bookmaking referred to The

Fashion Cleaners and that the person conducting the book-making operation was ''writing action'' on cigarette papers.

After appellant had stated that the clothes on the table were his, the officer asked him, ''Is there anything in the shirt or in these clothes that you don't want me to see?'' The appellant answered, ''I don't think you have any right to look in my clothes.'' The officer then asked appellant for his identification. The only identification which he was able to produce was a hospital admittance card. That card had his name, Frank Harris, on it. Mr. Govan appeared to be acquainted with appellant. The appellant did not have a driver's license with him, but he did show some other identification. When the officer asked appellant where he lived, the appellant gave him an address which was in that neighborhood.

The officer then told him that he would have to stay with the officers until his record was checked to determine whether or not any ''wants'' or warrants were outstanding against him. When the officer told appellant that his name would have to be checked through records and identification, he indicated to him that if they could find no record under that name, they might possibly take him to the station to fingerprint him in order to determine his positive identification. The officer did not at any time mention that the appellant would have to be searched.

The appellant then picked up the shirt, and stated, ''All right, you can look through my things.'' As appellant picked up the shirt, he reached into the pocket and kept his hand there for about five or ten seconds. The officer asked him what he was trying to take out of the pocket and appellant answered, ''Toothpicks.'' The officer stepped to his right in an effort to get a better view of what was going on, but appellant turned to his left and held the shirt between himself and the officer, so that the latter could not see appellant's hand which was behind the shirt. As the officer again stepped to his right, he saw appellant take his hand from the shirt and reach behind himself towards a jacket which was hanging on a rack. It appeared to the officer that he was trying to place something that looked like white paper into the pocket of the jacket. The officer reached for his hand and as he did so, appellant dropped the article from his hand onto the floor. The officer held appellant until his partner arrived, at which time the officer picked up the object. After examining this material, the officer formed the

opinion that it contained marijuana, which opinion later proved to be correct. The officer then placed the appellant under arrest. Appellant denied that the marijuana was his and stated that he had never smoked ''pot.''

When the officers arrived at The Fashion Cleaners they did not have a warrant to search the premises, nor did they have a warrant for the arrest of any person.

The defendant contends that the marijuana (exhibit 1) was obtained as a direct result of illegal acts and improper conduct on the part of the police officers; that at the time the defendant attempted to rid himself of the marijuana, he was under illegal arrest. There is no merit in this contention.

Defendant concedes that the officers' conduct was proper up to the time that they refused to accept defendant's identification as sufficient. The defendant was not arrested until after the marijuana was discovered. At that time the arrest was based upon probable cause.

An ''arrest'' is defined in section 834 of the Penal Code: ''An arrest is taking a person into custody, in a case and in the manner authorized by law. . . .'' Section 835 of the Penal Code states that: ''An arrest is made by an actual restraint of the person [of the defendant], or by his submission to the custody of an officer. . . .''

In *People* v. *Amos, supra,* 190 Cal.App.2d 384, this court stated, at page 388: ''Asked for identification he showed them a property slip disclosing that he had been arrested for petty theft. The officers placed him in their car while they checked with headquarters to see if he was wanted. He was not arrested at that point; merely detained for the purpose and during the time of making reasonable inquiries; such a detention does not in and of itself amount to an arrest. (See *People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235] ; *People* v. *Anushevitz,* 183 Cal.App.2d 752, 754 [6 Cal.Rptr. 785] ; *People* v. *Galceran,* 178 Cal.App.2d 312, 315-316 [2 Cal.Rptr. 901].)''

The court aptly stated in *People* v. *Elliott,* 186 Cal.App.2d 185 [8 Cal.Rptr. 716], at page 189: ''Moreover, under the circumstances presented to the officers, the detention of the appellant for a reasonable period of time so that it could be determined whether there were any outstanding warrants arising from traffic-violation charges against him, or whether there was other information relating to him in the police records, does not appear to have been unreasonable. (Cf.

*People* v. *Rodriquez,* 140 Cal.App.2d 865, 867 [296 P.2d 38].)''

It was said in *People* v. *King,* 175 Cal.App.2d 386 [346 P.2d 235], at page 390: ''In other words, we believe that the federal agents under the circumstances of this case, had the right to stop the car and to question the appellant quite apart from the making of any arrest, and that that is what was done. Whether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search. The strength of the information the officer requires to engage in questioning is necessarily much less than it would be to arrest and search.''

For the purpose of applying the exclusionary rule to evidence, it is clear from the above cases that all detentions do not amount to arrests. If a person is detained for the purpose of questioning or while a check is made to determine whether or not any warrants are outstanding against him, he has not been arrested and such detention is legal. (*People* v. *Amos, supra,* 190 Cal.App.2d 384, 388; *People* v. *Elliott, supra,* 186 Cal.App.2d 185, 189.)

The federal decisions set forth the same rules as the California decisions in regard to searches under illegal arrest. (See *United States* v. *Vita* (2d Cir. 1961), 294 F.2d 524, cert. denied (1962), 396 U.S. 823 [82 S.Ct. 837, 7 L.Ed.2d 788].)

Here, defendant's detention was only incidental to a police investigation, admittedly legitimate, for the purpose of questioning and identification. Defendant was only detained for a few minutes by the officers (defendant testified it was 20 minutes) before his arrest for possession of narcotics.

Officer Briggs' primary purpose in questioning defendant was to positively identify him. Defendant's only identification was a hospital admittance card and another card. (The officer testified he did not remember what the second card was.) The defendant did not possess a driver's license or selective service registration card. Defendant was in The Fashion Cleaners and the officer had observed cigarette papers in the pocket of defendant's shirt. Since the officer was investigating a complaint of bookmaking and he was informed that the ''action'' was being written on cigarette paper in The Fashion Cleaners, the officer told defendant he would have to stay with the officer until his name was checked through records and identification. This conduct was cer-

tainly reasonable on the officer's part. If any warrants were outstanding against the name Frank Harris, or if that name (and address) were contained in the police records, the appellant's identification would be verified and the officers could be reasonably sure of where the appellant could be contacted if further inquiries became necessary at a later date. A detention for a reasonable period of time for the purpose of checking police records for information relating to the person being questioned is not unreasonable and does not amount to an arrest. (*People* v. *Amos, supra,* 190 Cal.App. 2d 384, 388; *People* v. *Elliott, supra,* 186 Cal.App.2d 185, 189.)

Officer Briggs testified that he told defendant "[I]f we could find no record under that name, it might be possible to take him [to police headquarters] to fingerprint him to determine his positive identification."

Defendant contends that the officers told him that if he didn't submit to a search there that they would run him in and search him at the station. (Officer Briggs denied the defendant's contention.) Thus defendant contends at that time the "improper, illegal and coercive position was made clear to defendant," and as a result defendant "had only two courses to follow, viz., to get rid of the marijuana or have it found on him at the station. Defendant contends that he was under illegal arrest before he tried to get rid of the marijuana," and therefore, the evidence obtained after the illegal arrest would have to be suppressed. (*People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Walker,* 203 Cal.App.2d 552, 556 [21 Cal.Rptr. 692].)

The trial court as the trier of fact believed the officers' testimony and rejected the defendant's. We cannot reweigh this evidence on appeal, but are bound by the determination of the trier of fact.

The officer indicated that whether or not the defendant would be asked to go to the police station was, and remained, only a possibility. The officer never did ask defendant to go to the station, nor did he state definitely that defendant would be required to go to the station; defendant was not under arrest at the time he contended.

The detention of defendant for the purpose of checking police records was legitimate and reasonable under the circumstances; therefore, we find that there was no illegal arrest.

The cases of *People* v. *Sanders, supra,* and *People* v.

*Walker, supra,* are distinguishable since in both of them there had been an arrest and the incriminating evidence had been discovered as a direct result of such an illegal arrest. Here, there was no arrest.

"If the proposition holds true that search [or seizure] is not justified by its results, the converse holds true that a search based on appearances is not rendered unlawful by the fact that the contraband actually on hand was not that which reasonably was thought to be present." (*People v. Jiminez,* 143 Cal.App.2d 671, 673 [300 P.2d 68].)

There was no illegal arrest and the evidence complained of was not a product of an illegal search and seizure.

The judgment of conviction is affirmed. Attempted appeal from order denying new trial dismissed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 3, 1963. Peters, J., was of the opinion that the petition should be granted.