[Crim. No. 2639. Fourth Dist., Div. One. Aug. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALLEN CRUPPI, Defendant and Appellant.

Peter Clarke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert T. Jacobs, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, Acting P. J.—Defendant appeals from a conviction of the offense of possession of marijuana following trial by the court without a jury. The sole issue on appeal is whether police action in stopping, detaining and questioning defendant, which culminated in the discovery of marijuana in his possession, constituted an unlawful search and seizure.

At 5:15 a.m. on November 7, 1965, two police officers in a patrol car saw defendant step from behind a telephone pole and walk across Highland Avenue at its intersection with 18th Street in National City. It was dark. Traffic across the intersection was controlled by light signals. The patrol car was going northerly on Highland and stopped for the red light. Defendant crossed the intersection with the green light, in front of the officers, and then proceeded southerly on Highland. The officers turned their car around; came alongside defendant; and engaged his attention. Defendant stopped. One of the officers left the car and asked him for his driver's license. He had none. The evidence shows it had been taken from him in connection with a traffic violation. In response to a request for other identification defendant gave the officer his draft card. His residence address, as shown on the card, was in the 2100 block on Highland Avenue, which is approximately three blocks south of the place where he had been stopped. The officer asked defendant "where he was going and where he was coming from." In reply defendant "stated he had been at Christie's in Chula Vista and that he was on his way home." Christie's is an all night restaurant located south of defendant's residence. As defendant had gone three blocks beyond his home when stopped, the officer asked him "how come he had not gone directly home from Christie's." In response defendant said the reason he had come to the corner of Highland and 18th was to look at the school

grounds. The neighborhood in the vicinity of this intersection consists of business structures, residence buildings and the school. Defendant testified he passed his home and went north to 18th Street to look at some temporary buildings located at the school. Whether he told the officers this was the reason for his wanting to see the school does not appear. The officer testified the name ''Cruppi'' was familiar, but was unable to relate the name to any specific incident. Defendant's draft card was given the second officer who radioed for a ''name check'' and was told there were two outstanding warrants for defendant's arrest. The time elapsing between defendant's initial detention and receipt of the radio report was approximately 10 minutes. Upon learning of the outstanding warrants the officers placed defendant under arrest; made a patdown search for weapons; and took him to the police station. As a part of the booking process at the station his pockets were emptied and the marijuana, which was the basis of the charge against him, was discovered.

The investigating officer testified when he stopped defendant he did not have ''probable cause'' to believe defendant had committed a felony; and he did not have any reason to believe any burglaries or other crimes had been committed in the area on that night.

The defendant testified he first saw the officers when he was in the neighborhood of Highland Avenue and 21st Street and they were proceeding southerly on Highland. The officers did not remember seeing defendant at any time before he stepped from behind the telephone pole, nor going southerly on Highland Avenue.

▉ Police action in stopping, detaining and questioning an individual for investigative purposes is controlled by the rules governing application of the provisions of the Fourth Amendment to the Constitution proscribing unreasonable searches and seizures. (*Terry* v. *Ohio,* 392 U.S. 1, 9, 16-22 [20 L.Ed.2d 889, 898, 903-906, 88 S.Ct. 1868, 1873, 1877-1880].) Unreasonable interference with personal security through such action is forbidden, but reasonable interference is not forbidden. (*Id.*) The California courts consistently have ruled a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the proper discharge of his duties. (*People* v. *Mickelson,* 59 Cal.2d 448, 450, 452 [30 Cal.Rptr. 18,

380 P.2d 658] ; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52] ; *People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531] ; *People* v. *Villareal,* 262 Cal.App.2d 438, 444 [68 Cal.Rptr. 610] ; *People* v. *Wigginton,* 254 Cal.App.2d 321, 324 [62 Cal.Rptr. 104] ; *People* v. *Cowman,* 223 Cal.App.2d 109, 116 [35 Cal. Rptr. 528] ; *Hood* v. *Superior Court,* 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782] ; *People* v. *Beverly,* 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67] ; *People* v. *Porter,* 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886] ; *People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433] ; *People* v. *Amos,* 190 Cal.App.2d 384, 387 [11 Cal.Rptr. 834] ; *People* v. *Elliott,* 186 Cal.App.2d 185, 188 [8 Cal.Rptr. 716] ; *People* v. *Murphy,* 173 Cal.App.2d 367, 375 [343 P.2d 273] ; *Gisske* v. *Sanders,* 9 Cal.App. 13, 16 [98 P. 43] ; see also *Rios* v. *United States,* 364 U.S. 253, 261 [4 L.Ed.2d 1688, 1693, 80 S.Ct. 1431, 1436].) The California rule conforms to Fourth Amendment requirements. In determining whether the stopping, detaining and questioning in a particular case is reasonable or unreasonable upon a claimed Fourth Amendment violation, the court considers the need for the action taken to properly discharge the officer's duty in light of the facts known to him at the time, and balances that need against the extent and nature of the particular interference with personal security. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 906-907,88 S.Ct. 1868, 1869, 1880] ; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 94-95 [41 Cal.Rptr. 290, 396 P.2d 706] ; *People* v. *Mickelson, supra,* 59 Cal.2d 448, 452; *People* v. *Ellsworth, supra,* 190 Cal.App.2d 844, 847 ; *People* v. *Davis,* 188 Cal.App.2d 718, 724 [10 Cal.Rptr. 610].)

In the instant case the purpose for stopping, detaining and questioning defendant was to ascertain the reason for his presence in the neighborhood at 5 :15 in the morning. Pertinent circumstances justifying the investigation were the darkness of the early morning hour, the nature of the neighborhood, that defendant was on foot and alone, and the fact he appeared to have been hiding from the officers until the signal change required them to stop and periled the security the telephone pole otherwise might have afforded him. Defendant's testimony he previously had seen the officers gives credence to the assumption he was on the lookout for them and was attempting to avoid being seen. Under such circumstances it was not unreasonable to ask defendant where he was coming from, where he was going, and to identify himself.

The information developed by this inquiry was sufficient to cause any reasonable officer to be suspicious. Defendant did not have a driver's license; his statement he was on his way home from Christie's was questionable because he had gone beyond his home; and his explanation for being in the neighborhood, which was to look at a school in darkness at 5:15 in the morning, was incredible on its face. Under these circumstances, it was not unreasonable for the officer to detain defendant pending a "name check" by radio. The investigation did not consume more than 10 minutes; consisted of asking routine questions; was not accompanied by any search; and involved minimum inconvenience. The total circumstances justified the action taken by the officer in the discharge of his duty to protect the public, prevent crime and detect criminals. (Cf. *People* v. *Blodgett, supra,* 46 Cal.2d 114, 117; *People* v. *Amos, supra,* 190 Cal.App.2d 384, 387-388; *People* v. *Elliott, supra,* 186 Cal.App.2d 185, 189; *People* v. *Rodriguez,* 140 Cal. App.2d 865, 867 [296 P.2d 38].) Defendant was not unlawfully stopped, detained or questioned.

The judgment is affirmed.

Whelan, J., and Lazar, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 9, 1968. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.