[Crim. No. 3509. Fourth Dist., Div. One. Mar. 24, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN EDWARD OUELLETTE, Defendant and Appellant.

Benedict & Blake and George Benedict for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was charged with possession of marijuana; moved to suppress evidence, i.e., marijuana he alleges was the product of an unlawful search and seizure, which was denied; was found guilty by the court without a jury; moves for a new trial, which was denied; and appealed pursuant to the provisions of former Penal Code section 1237, subdivision 2, contending the denial of his motion to suppress evidence was error.

On the afternoon of June 4, 1967, a member of the Navy Shore Patrol named Shank saw defendant Ouelette and his codefendant, Hewitt, at the corner of Third and Broadway, in San Diego; stopped them because defendant fitted the description of a serviceman wanted for unauthorized absence; and asked them if they were in the military service. Hewitt stated he was and produced identification. Defendant stated he was not and when asked ''if he had any kind of identifica-

tion on him, draft card, school card, maybe going to school,'' stated he did not have any identification. Hewitt said he did not know defendant. Shank continued to engage defendant in conversation; saw a key in the latter's hip pocket; asked where the key belonged and was told ''to a locker club.'' This information indicated to Shank defendant was in the service and prompted him again to ask whether defendant was in the service to which the latter replied he was but ''that his I.D. card and his liberty card'' were in the locker club. Thereupon Shank asked defendant ''if we could go get his papers,'' and defendant said ''Yes.'' Shank told defendant he was in custody; put him in the back of a truck; took him, Hewitt and a police officer, whom Shank had called in the meantime, to the locker club. The lockers in the club were ''almost exclusively used by military people.'' Shank asked defendant to get the latter's papers out of his locker. In response to this request defendant opened the locker and produced the papers. While the locker was open the police officer, who was standing nearby, noticed ''a corn cob pipe sitting on the top shelf, and a wax—what appeared to be a wax paper bag with some sort of debris of something inside''; the bag ''contained something dark in substance.'' The officer had experience and training in narcotics investigation; knew ''marijuana was commonly carried in wax paper bags''; also knew corncob pipes frequently are used by marijuana smokers; and because the wax paper bag containing the dark substance was alongside the pipe he ''felt strongly that it contained marijuana.'' At the hearing on the motion the officer testified: ''I saw the bag, I saw the corn cob pipe, and the close proximity of the two together, the fact that there was something in the wax paper from previous experience I felt that I saw marijuana in a wax paper bag.'' He took the bag from the locker; examined its contents; and identified the contents as marijuana. Thereupon defendant was arrested for possession of marijuana.

The trial judge hearing the motion to suppress concluded at the time the waxed paper bag was removed from the locker the officer had reasonable cause to believe a public offense was being committed in his presence by the defendant, and that seizure of the marijuana in the bag was not unlawful.

Defendant contends that Shore Patrolman Shank unlawfully detained and placed him in custody; the seizure of the marijuana was the product of this unlawful conduct; the evidence thus obtained was inadmissible under the ''fruit of

the poisonous tree" doctrine; and cites *People* v. *Stoner,* 65 Cal.2d 595, 598 [55 Cal.Rptr. 897, 422 P.2d 585], and *People* v. *Stewart,* 241 Cal.App.2d 509, 515 [50 Cal.Rptr. 630], in support of his position. (See also *People* v *Franklin,* 261 Cal.App.2d 703, 705 [68 Cal.Rptr. 231].)

Under the laws of the United States a military person absent without leave is subject to apprehension and court-martial. (10 U.S.C.A. § 886.) The shore patrolman, Shank, because defendant fitted the description of a serviceman wanted for unauthorized absence, had probable cause to stop and interrogate defendant for the purpose of identification. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-452, 454 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Cruppi,* 265 Cal.App.2d 9, 11-12 [71 Cal.Rptr. 42]; *People* v. *Hawxhurst,* 264 Cal.App. 2d 398, 400-401 [70 Cal.Rptr. 253].) The interrogation developed suspicious circumstances furnishing probable cause for further detention and investigation when defendant denied he was in the military service; stated he had no identification whatever on his person; and then admitted he was in the military service. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 454; *People* v. *Cruppi, supra,* 265 Cal.App.2d 9, 13; *People* v. *Smith,* 210 Cal.App.2d 252, 257 [26 Cal.Rptr. 620].) It was not unreasonable to take defendant to his locker after he told the shore patrolman he had his identification and liberty card there and offered to obtain and show them to him. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 454.) In addition, at this juncture the shore patrolman was authorized to take defendant into custody because he was in violation of Naval regulations requiring enlisted personnel on active duty to carry the "Armed Forces Identification Card" issued him. (Bureau of Naval Personnel Manual, § B-2103, subd. (1); Uniform Code of Military Justice, art. 92 [10 U.S.C.A. § 892]; Uniform Code of Military Justice, art. 7 [10 U.S.C.A. § 807].)

Both trial and appellate courts of this state must take judicial notice of the statutory law of the United States (Evid. Code, §§ 451, subd. (a), and 459); and may take judicial notice of regulations issued by or under the authority of the United States or any public entity in the United States, and of official acts of the Executive Department of the United States. (Evid. Code, §§ 452, 459.)[1]

---

[1]Evidence Code section 459 requires an appellate court taking judicial notice of a matter specified in Evidence Code section 452, to comply with Evidence Code section 455, subdivision (a), i.e., to "afford each

Shore Patrolman Shank testified he took defendant into custody after learning he was a member of the military services and did not have on his person any identification. Whether this "custody" consisted in the temporary detention of defendant as a part of the investigation to ascertain whether he was the person whom the shore patrolman suspected of being absent without leave, or in apprehension for violation of Naval regulations, probable cause existed for such detention and apprehension. Under these circumstances the "custody" was not illegal, and defendant's opening his locker was not the product of illegal conduct.

 Defendant contends, nevertheless, the shore patrolman acted illegally in that, as admitted by him, he did not comply with article 31 of the Uniform Code of Military Justice (10 U.S.C.A. § 831), which in pertinent part provides:

"No person subject to this chapter [a member of the Armed Forces] may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court martial.

" . . . . . . . . . . . . . . .

"No statement obtained from any person in violation of this article . . . may be received in evidence against him in a trial by court-martial."

 The provisions of article 31 apply only to court-martial proceedings (*United States* v. *Simpson,* 162 F.Supp. 677, 682; *Commonwealth* v. *Beaulieu,* 333 Mass. 640 [133 N.E.2d 226, 234, 54 A.L.R.2d 810]); prescribe requirements simulating those of the decisional rule in this state requiring an accused be advised of his constitutional right to remain silent as a condition to admission in evidence of any incriminating statement by him; and do not apply to interrogations preceding the accusatory stage. (See *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) No reason existed for any accusation or suspicion defendant violated Naval regulations requiring him to carry an identification card until he admitted he was a member of the armed

party reasonable opportunity . . . to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." This court has complied with the foregoing by an appropriate order.

forces. After admitting this fact, he made no further incriminating statements. Assuming the applicability of article 31 to the case at bench, noncompliance with its requirement was not related to the events leading to discovery of the marijuana in the locker by the police officer.

When the police officer saw the waxed paper bag containing the dark substance next to the corncob pipe, in light of his knowledge of the common use of waxed paper bags as containers for marijuana and of corncob pipes by marijuana smokers, he had reasonable cause to believe defendant was in possession of marijuana. (*People* v. *Towner,* 259 Cal.App.2d 682, 684 [66 Cal.Rptr. 559]; *People* v. *Castro,* 176 Cal.App.2d 325, 328 [1 Cal.Rptr. 231].) Observing that which was in plain sight was not a search. (*People* v. *Schader,* 62 Cal.2d 716, 725 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) The issue of probable cause is determined in light of the officer's knowledge, including his expertise respecting the manner in which marijuana users package and smoke marijuana. (*Ibid.*) Where, as in the instant case, the trial court finds there is reasonable cause to believe the defendant is committing an offense in the presence of the officers, the arrest should be held lawful unless the evidence, as a matter of law, dictates the conclusion a prudent man in the position of the officer, knowing what he knew and seeing what he saw, would not have reasonable cause to believe and to entertain a strong suspicion the person arrested was violating the law. (*People* v. *Ingle,* 53 Cal.2d 407, 414 [2 Cal.Rptr. 14, 348 P.2d 577].)

Defendant's reliance on *People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776], in support of his position is misplaced because of the difference in the mode of packaging the marijuana in the cited case and in the instant case. (*People* v. *Castro, supra,* 176 Cal.App.2d 325, 329.)

Where, as in the case at bench, "before making a search and seizure officers are justified in making an arrest it is immaterial that the search and seizure preceded rather than followed the arrest." (*People* v. *Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116].)

Denial of defendant's motion to suppress was not error.

The order denying the motion for new trial is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.