[Crim. No. 6993. Second Dist., Div. Two. Apr. 20, 1960.]

THE PEOPLE, Respondent, v. JOSEPH WHITE, Appellant.

Joseph White, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of violating section 11500 of the Health and Safety Code, a felony (possession of heroin). He has appealed from the judgment.

Acting on information furnished by an arrestee that narcotics would be found in the room of one Griggs, in the Lincoln Hotel in Los Angeles, Officers Alexander and Heldoorn proceeded to said hotel to investigate. They discovered that he occupied Room 65. Upon going to that room the officers were given permission by Griggs to search it, but found no narcotics. While still in the hotel, the officers received information from defendant's wife that they should investigate Room 60. They went to Room 60 and knocked on the door.

Defendant opened the door and, when he did so, the officers observed on the floor and on the table a whitish powder that resembled heroin. They also observed on the table a quantity of various colored balloons. They then entered the room and placed the defendant under arrest. There was an air-well outside the window of this room. The officers recovered therefrom six colored balloons, inside of which they found quantities of a whitish powder. They also found a whitish powder, some of which they retrieved, on the soles of defendant's shoes. It was the opinion of William King, a qualified forensic chemist, that the white powder in question was heroin. At the scene of the arrest, defendant said to Officer Heldoorn, "There is enough stuff in this room to send me back to the joint. Can't we make a deal?" He admitted to the officer that he knew the balloons retrieved from the air-well had been in the room. He explained that he was on parole and had to get rid of the stuff. On examining the condition of the screen of the window opening on the air-well, the officers discovered that it had been ripped.

Defendant was the manager of the hotel. However, he was not living in Room 60. A tenant by the name of Henry Young had been occupying it; his rent was paid up to April 27th, the date of defendant's arrest. He left that night. Defendant did a little tailoring work. He testified that Bob Farris came to the hotel to buy a suit from Young, and that his wife suggested that he go up with Farris to see the suit. Defendant testified that the officers knocked on the door and identified themselves as police officers and that when he opened the door they walked right in. He denied making the statement to which the officers testified. Defendant explained that Young, the tenant, had gone out to buy some whiskey at the time of the arrest, and that he had not seen him since. Farris was over by the window when the officers entered the room.

In seeking a reversal defendant contends (1) that the heroin was illegally admitted into evidence on the theory that it was obtained through an illegal search and seizure; (2) that the white powder found in his possession was never shown, by a qualified forensic chemist, to be a narcotic since this evidence was introduced by way of stipulation; and (3) that the court lacked jurisdiction to try this case because a previous complaint, charging him with the same offense, had been dismissed at a prior preliminary hearing. We find no merit in any of these contentions.

 A police officer may make an arrest without a warrant when he has reason to believe a felony is being committed in his presence (Pen. Code, § 836), and may make a search as an incident to a lawful arrest without obtaining a search warrant. (*People* v. *Winston*, 46 Cal.2d 151, 162 [293 P.2d 40].) In the instant case, defendant voluntarily opened the door to Room 60 when the officers knocked. They observed a whitish powder on the table and on the floor and also a quantity of balloons on the table. The officers made these observations before entering the room and concluded that this looked like a narcotic operation. The law is settled that an officer may look through an open aperture in a person's home without violating that person's constitutional rights. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Castro*, 176 Cal.App.2d 325, 328 [1 Cal.Rptr. 231]; *People* v. *Hen Chin*, 145 Cal.App.2d 583, 586 [303 P.2d 18].) If such observations reveal to the officer sufficient facts to lead him to believe a felony is being committed, he may act upon these observations, enter the home, make an arrest, and conduct a search. (*People* v. *Martin, supra*; *People* v. *Castro, supra*; *People* v. *Chong Wing Louie*, 149 Cal.App.2d 167, 170 [307 P.2d 929].) When Officers Alexander and Heldoorn looked through the open door of Room 60 and saw what appeared to them to be paraphernalia commonly used in the narcotic traffic, it follows that they were entitled to enter the room, make an arrest and search the premises. Whether or not the officers first saw the incriminating evidence before entering the room is a question of fact which was resolved against defendant by the trial court. Defendant contends that the officers rushed right into the room upon the door's being opened, and that they had no time to make any prior observations of possible incriminating evidence. Implicit, however, in the judge's ruling is the fact that he believed the officers' testimony that they made the observation of this evidence first, before they entered the room, and disbelieved the story of defendant. This is the prerogative of the trial court and its decision on this factual question is binding on appeal. It therefore follows that the officers were entitled to enter the room and search the premises and that the contraband found was admissible.

At the preliminary hearing, the deputy district attorney and defendant's attorney entered into a stipulation that William King was called; that he was a qualified forensic chemist employed by the Los Angeles Police Department; that he received the evidence in this case, examined it, and found that

the white powder was heroin. ■ It is clear that a defendant is bound by a stipulation entered into by his attorney in his presence if he makes no protest at the time. (*People* v. *Cohen*, 94 Cal.App.2d 451, 457 [210 P.2d 911].) ■ Defendant not only made no objection to this stipulation at the preliminary hearing but also failed to make any objection thereto at the trial in the superior court. He is therefore in no position to question that stipulation for the first time in this court. Such stipulation sufficiently established the fact that the white powder in question was heroin.

■ Appellant contends that the superior court had no jurisdiction to try this case. It appears that a prior complaint charging him with the same offense had been dismissed by the magistrate. It is defendant's theory that such action is a bar to a subsequent prosecution for the same offense. In the early case of *Ex parte Fenton*, 77 Cal. 183 [19 P. 267], the court stated (p. 184): "The fact that defendant had been previously arrested on the same charge, examined before a magistrate, and discharged, is not a bar to a second arrest and examination." This case is cited with approval on this point in the recent case of *People* v. *Prewitt*, 52 Cal.2d 330, 340 [341 P.2d 1]. The *Fenton* case was also cited in *United States ex rel. Rutz* v. *Levy*, 268 U.S. 390, 393 [45 S.Ct. 516, 69 L.Ed. 1010], wherein it was stated: "Under state law it has uniformly been held that the discharge of an accused person . . . for want of probable cause constitutes no bar to a subsequent preliminary examination before another magistrate."

The judgment is affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.