[Crim. No. 7471.   Second Dist., Div. Three.   May 25, 1961.]

THE PEOPLE, Respondent, v. MIKE MEGLIORINO, JR., Appellant.

Frank Duncan and Elinor Chandler Katz for Appellant.

No appearance for Respondent.

SHINN, P. J.—In a court trial defendant was found guilty of possessing marijuana, was sentenced to one year in the Los Angeles County Jail and appeals from the judgment.

The matter was submitted upon the transcript of the preliminary hearing with each side reserving the right to offer additional evidence.

There was evidence of the following facts: On May 9, 1960, Officer Edward J. Sanchez of the Los Angeles Police Department received a memorandum from the Venice Police Division stating that information had been received from one Gloria Jacquez to the effect that her husband, Joseph, was addicted to narcotics and that he was purchasing narcotics from the defendant, Mike Megliorino. Prior to this date, Officer Sanchez had not known Gloria Jacquez.

On May 11, 1960, at approximately 10:30 a. m. Officer Sanchez, accompanied by Sergeant Robert Burkland and Sergeant Merle Walker, went to defendant's residence. When the officers arrived at the residence it was unoccupied. The front door and the screen door were both open. Sergeant Burkland entered the house and stayed for approximately one-half minute. About 11:30 a. m. Mrs. Connie Megliorino entered the residence. There is conflicting evidence as to what thereafter took place. Mrs. Megliorino testified that upon her return she found the front door open; she found clothes dumped out of a box and into the bathtub; the bed had been messed up; and a folded newspaper had been opened and placed on the bed. Further, that shortly after she returned home Dora Herrara, who had been sitting with Mrs. Megliorino's children, came to the house with the children; as she was paying Dora Herrara for her services three police officers entered the house; one took the money and asked what it was for. Mrs. Megliorino testified that the officers did not ask nor receive permission to enter the house.

Officer Sanchez testified that he went to the door, identified himself as a police officer and asked where the defendant was; and that Mrs. Megliorino stated that she did not know. He asked her if there were any narcotics in the house and she again replied that she did not know. Officer Sanchez then asked, "Well, do you mind if I look around for some?" She replied, "No. Go ahead. Go ahead. I don't care. I don't think there is any here." Mrs. Megliorino's testimony at the trial was to the effect that she couldn't recall whether she had given permission to search the house.

Officer Sanchez found 17 rolls of white scored pills in a brief case in the living room. Beneath a night stand in the bathroom he found a Prince Albert tobacco can which contained marijuana and five hand-rolled cigarettes which also contained marijuana. The tobacco can also contained more white scored pills. The white pills were proved to contain amphetamine, a narcotic.

At approximately 5:30 p. m. defendant approached the residence. The officers stepped out of the house with their guns drawn and placed defendant under arrest. At first he denied knowledge of the pills. When asked about how much marijuana he had in the house he stated that he did not have any. Shortly after being shown the marijuana he admitted knowledge of the marijuana and the white scored pills, and stated that he had purchased the marijuana at a drive-in at Imperial and Western about one week before; he rolled some of the cigarettes himself and smoked them when drinking, and had taken the pills when he was not using marijuana. He also kept the marijuana around for his friends.

Defendant's only contention is that the trial court erred in admitting into evidence marijuana found in his house as a result of a search which he alleges exceeded the limits of the consent given by his wife. We fail to agree.

Defendant claims that the officers only received consent to "look around" and that a distinction must be made between merely "looking around" and "searching," citing as authority *People* v. *Ambrose*, 155 Cal.App.2d 513, 522 [318 P.2d 181], wherein the court stated: "A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way . . . the mere looking at that which is open to view is not a 'search.'"

The distinction in the Ambrose case was made for the purpose of showing that the evidence was not obtained as the result of an unlawful search, but as a result of its being in plain and open sight where it could be seen or found by anyone merely looking around. Such a distinction is not applicable in the instant case as the question here is whether the officer went beyond the scope of the consent to "look around."

The trial judge stated: ". . . I think the testimony of the officer is to be believed that they did get permission for a search."

The court's acceptance of the officers' testimony is not subject to review. (*People* v. *Melody,* 164 Cal.App.2d 728, 734 [331 P.2d 72].)

In light of the fact that Mrs. Megliorino knew of the officers' intent and purpose, it is clear that the trial court properly construed that her consent to "looking around" the house was a consent to "search" the house.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.