[Crim. No. 7517.   Second Dist., Div. Three.   June 28, 1961.]

THE PEOPLE, Respondent, v. ADOLFO GUZMAN
REGALADO, Appellant.

Adolfo Guzman Regalado, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—An information was filed by which the appellant was accused of the crime of unlawful possession of heroin. (Health & Saf. Code, § 11500.) He was represented by a deputy public defender. Trial by jury was waived. He was found guilty. Both his motion for a new trial and his application for probation were denied. The judgment of the court was that he be punished by imprisonment in the state prison for the term prescribed by law.

While the letter of the appellant to the county clerk

indicating his desire to institute an appeal is not a formal notice of appeal, it will be liberally construed so as to permit a hearing on the merits. (*People* v. *Robinson,* 43 Cal.2d 143, 145 [271 P.2d 872].) We consider the matter to be an appeal from the judgment and from the order denying the motion for a new trial. The appellant has not requested that this court appoint counsel to represent him on this appeal. He did ask for an extension of time within which to file his opening brief; the request was granted. Acting in propria persona, he has filed an opening brief and a closing brief in which he clearly and intelligently presents his contention that his conviction cannot stand because it rests on evidence illegally obtained. The evidence will be summarized.

At the trial it was stipulated that it would be deemed that Officer Miller had been called, sworn and testified as follows: He was a forensic chemist with the Los Angeles Police Department; on July 19, 1960, he received People's Exhibit 1; the contents thereof consisted in part of two cellophane bindles, each of which contained a white powder; in his opinion the white powder was heroin; a "hype kit" was contained in a piece of tissue paper, such kit being a hypodermic needle and an eyedropper with bulb.

Patrick Walsh testified that he was a police officer of the city of Los Angeles attached to the narcotic division, such assignment having been of seven years' duration. He arrested the appellant on July 19, 1960, about 12:05 a. m. at the President Hotel in Los Angeles. He saw the appellant and three other persons enter the hotel. After waiting about five minutes, the officer talked to the manager who said that the persons he had observed had gone up to the third floor. The witness and his partner went to the third floor. As they came to room 326 they heard voices and tried to look through the keyhole but "it was locked." They noticed a small hole in the door which was about as big as the lead portion of a pencil. Looking through this hole, the witness saw the appellant standing at a table on which was a cellophane bindle. The paper bindle was unfolded on the table and the appellant had an eyedropper and a needle in his right hand. The witness testified that, in the light of his experience as a "narcotic officer," the eyedropper and needle indicated to him "that he was about to give himself a fix, and [*sic*] injection of narcotics." The eyedropper and needle constituted paraphernalia used by narcotic addicts. The witness had nothing to do with placing the hole in the door.

After the witness and his partner made observations through the hole, they forced the door open. The officer testified that: "As I entered, the defendant picked up an object up [sic] from the table, and placed it in his mouth. At that time I placed my hands on his throat to keep him from swallowing it. I told him to spit it out. At that time he spitted [sic] the object out on the floor, and I recovered it. It was a small cellophane bindle with a powder in the bindle." In addition, the officer recovered the partially opened paper bindle which he had observed on the table when he looked through the hole in the door. Each bindle contained a white powder. The bindles were the bindles which were part of People's Exhibit 1. He also took the eyedropper and the hypodermic needle from the floor. At the Police Administration Building, the appellant said that he had purchased the narcotics at the Grand Central Market that afternoon and that he had been using heroin since his arrival from another state a month before.

On cross-examination, Officer Walsh testified that the officers had no search warrant and no warrant for the arrest of the appellant. When he squatted down to try to look through the keyhole, he noticed "a small portion of light coming out of the hole from within the room"; it was a circular hole through a half-inch or three-quarters of an inch of wood. The hole was about 3 feet above the floor. In certain areas, which are "high crime areas," there are many such holes in hotel-room doors. The officer did not know by whom the particular hole through which he looked had been made. As to any practice of the police department to place holes in doors of rooming or hotel establishments, the witness testified that in his experience it was only done with the cooperation of the manager of the premises. With respect to the witness' use of "paper" and "cellophane" in his testimony as to the bindles, he said: "I believe, counselor, that I stated paper, then I corrected myself and said cellophane." When he held the defendant, it was for the purpose of preventing him from swallowing whatever it was that he had placed in his mouth.

Exhibit 1 was offered in evidence. The appellant's attorney objected to the introduction of the object which the appellant "had been prevented from swallowing." He further objected to the introduction of both objects containing narcotics seized as the result of the observation made through the hole in the

door. The objection was overruled and the exhibit was received in evidence.

On his own behalf, the appellant testified that he was the occupant of the hotel room. He was not aware of the hole in the door. When the officer took hold of his throat he could not talk. His "girl friend" told the officer to turn him loose because he was going to choke the appellant. The officers "just answered and cussed her out and pushed her out of the way." The grip was maintained on his throat until he "had to spit it out." He did not see the cellophane package on the table. On cross-examination, the appellant said he told the officers that he had bought some narcotics at the Grand Central Market. He was not going to take a "fix" in that room; he had "already taken one about an hour earlier." One of the cellophane bindles contained narcotics; that was the one he put in his mouth. The "hype kit" was on the table and "the other fellow threw it on the floor as the officers walked in the room," but the appellant never had the kit in his hand. He had rented the room about an hour earlier.

■ "Whether the arrest was a legal one, since it was accomplished without a warrant of arrest, depends upon whether or not the police had reasonable cause to believe that appellant was committing or had committed a felony. (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531]; *People* v. *Cannon,* 148 Cal.App.2d 163 [306 P.2d 589].) ■ Reasonable or probable cause is such a state of facts as would lead a man of ordinary caution and prudence to believe, and conscientiously to entertain a strong suspicion that the person accused is guilty. (*People* v. *Soto,* 144 Cal.App.2d 294 [301 P.2d 45].)" (*People* v. *Gorg,* 157 Cal.App.2d 515, at p. 519 [321 P.2d 143]; see also *People* v. *Hurst,* 183 Cal.App.2d 379, 384 [6 Cal.Rptr. 483]; *People* v. *White,* 180 Cal.App.2d 99, 102 [4 Cal.Rptr. 261].) ■ The facts observed by Officer Walsh were clearly sufficient to constitute reasonable cause for believing that the appellant was committing a felony; consequently, the arrest was justified unless the manner in which such observation was made constituted an invasion of the appellant's rights of such a nature as to require exclusion of the evidence of what the officer saw. The problem is not new; it was presented to this court in *People* v. *Ruiz,* 146 Cal. App.2d 630 [304 P.2d 175]. In that case, the officers followed a woman and two other persons into a hotel. The officers listened outside the door of an apartment. A conversation was overheard which indicated to the testifying officer that a

narcotics transaction was taking place. He discovered a small hole in the door of the apartment about 2 feet above the floor. He denied having drilled the hole himself but he admitted that he had drilled such holes in the past. He observed the actions of Ruiz through the hole. In upholding the determination of the trial court that the evidence should not be suppressed as having been obtained as a result of an unlawful search and seizure, this court said (146 Cal.App.2d, at p. 633): ''There was evidence which would have justified a reasonable belief that a felony was being committed inside the apartment. . . . What Gerson heard and observed while outside the apartment was admissible in evidence, and was not obtained by an unreasonable search. . . . Had Officer Gerson drilled the hole in the door so as to observe what was going on inside the room, it would have been a flagrant violation of the constitutional rights of defendants. But it cannot be said from the evidence that Gerson drilled the hole. He denied doing so, and the testimony of defendants that the hole was not previously there merely created a conflict in the evidence on this point.'' (See also *People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Hurst, supra*, 183 Cal.App.2d 379, 386; *People* v. *White, supra*, 180 Cal.App.2d 99, 102; *People* v. *Hen Chin*, 145 Cal.App.2d 583, 586 [303 P.2d 18].)

As in the present case, in the Ruiz case the officers broke into the room. With respect to the propriety of such action, this court said in that case (146 Cal.App.2d, at p. 634): ''The forcible entry was justified. Had the officers knocked on the door, identified themselves, and waited to be admitted, the occupants would have had an opportunity to secrete the heroin. The officers had reason to believe that if they did not gain immediate access to the evidence, it might be destroyed.'' (See also *People* v. *Montano*, 184 Cal.App.2d 199, 205 [7 Cal.Rptr. 307].)

Even if the trial court should have sustained the appellant's objection with respect to the object which was dislodged from the appellant's mouth after Officer Walsh placed his hands on the appellant's throat ''to keep him from swallowing it'' (see *People* v. *Martinez*, 130 Cal.App.2d 54, 56 [278 P.2d 26]), the appellant would not be entitled to a reversal of the judgment because it is not reasonably probable that the result of the trial would have been different had such evidence been excluded. (See *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) If that object be eliminated from consideration, the conviction is still sufficiently sustained by the

evidence as to the other object, described as a cellophane bindle containing a white powder, which was on the table. (See *People* v. *Gardner,* 177 Cal.App.2d 43, 46-47 [1 Cal.Rptr. 830].) The stipulation with respect to the testimony of the forensic chemist sufficiently established that such white powder was heroin. (See *People* v. *White, supra,* 180 Cal.App.2d 99, 102-103.)

There is no requirement that the officer's testimony be corroborated in a case of this character. (*People* v. *McCrasky,* 149 Cal.App.2d 630, 635 [309 P.2d 115]; *People* v. *Garza,* 160 Cal.App.2d 538, 541 [325 P.2d 200].) His credibility was a matter for the determination of the trial court. (*People* v. *Valencia,* 156 Cal.App.2d 337, 342 [319 P.2d 377].) The evidence was sufficient to justify the conviction. No reversible error appears in the record.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied July 20, 1961, and appellant's petition for a hearing by the Supreme Court was denied August 23, 1961.