[L. A. No. 26693.   In Bank.   May 10, 1962.]

ROBERT JOHN BIELICKI et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Frank C. Wood, Jr., for Petitioners.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney (Los Angeles), Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Respondent and Real Party in Interest.

SCHAUER, J.—Petitioners seek prohibition to restrain respondent superior court from proceeding to trial on an information charging them with violation of section 286 of the Penal Code (the infamous crime against nature).

Timely motion was made at the preliminary examination to exclude all of the evidence offered by the State on the ground that it had been obtained by an illegal search and seizure in violation of the constitutional guarantees (U.S. Const., 4th and 14th Amends.; Cal. Const., art. I, § 19). The motion was denied and petitioners were held to answer. Petitioners then moved in the superior court to set aside the information for lack of reasonable or probable cause (Pen. Code, § 995) in that their commitment was based entirely upon inadmissible evidence. The motion was denied. We have concluded that on the particular facts of this case the challenged evidence was inadmissible and hence that the peremptory writ should issue.

The sole witness at the preliminary examination was Officer Hetzel of the Long Beach Police Department's vice squad. Officer Hetzel testified in substance to the following facts: The Pike Corporation, owner of an amusement park in the City of Long Beach, had authorized the police to go on the roof of a building in the park housing a group of pay toilets in order to ''do something in regard to the homosexual activity going on inside of the toilets.'' A pipe about 13 inches long and 1½ to 1¾ inches in diameter, capped when not in use, had been installed through the roof of the building over two of the toilet booths (referred to hereinafter as numbers 4 and 5). Officer Hetzel did not know who had installed the pipe. He testified, however, that the purpose of the pipe was ''To look through,'' and that a person so doing would observe an area of the two toilet booths below approximately 3 feet in total diameter (i.e., 18 inches on either side of a thin partition between the booths). If the toilets were in use the observer would therefore see part of the body of each person using them, depending upon the position of the occupant. The officer further testified that ''a lot of times'' each week he went on the roof of the restroom, uncapped the pipe, and watched the occupants of the toilets below. On each occasion he remained on the roof ''Until we make an arrest, or until we see that we can't make an arrest.''

At 11 p. m. on the night in question the officer uncapped the surveillance pipe and observed petitioners—who were then unknown to him—sitting on the respective stools of toilets 4

and 5. Petitioners passed several notes back and forth through a hole in the partition between their booths, and subsequently were seen by the officer to commit, by means of the hole in the partition, an act in violation of section 286 of the Penal Code. Officer Hetzel then called through a ventilator to two fellow officers in the street below, who entered the booths and placed petitioners under arrest. No warrant had been issued either for the search of the premises or for the arrest of petitioners.

■ The choice of remedy is appropriate. (Pen. Code, § 999a; *People* v. *Valenti* (1957) 49 Cal.2d 199, 203 [4] [316 P.2d 633]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 271 [1] [294 P.2d 23].)

There would appear to be no doubt—and the People do not contend to the contrary—that the acts of Officer Hetzel constituted a "search" as that term is used in the Fourth Amendment to the federal Constitution and section 19, article I, of our Constitution. ■ "[T]he term implies some exploratory investigation or an invasion and quest, a looking for or seeking out. . . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way." (*People* v. *West* (1956) 144 Cal.App.2d 214, 219 [5] [300 P.2d 729].) ■ The constitutional guarantees, of course, prohibit not all searches but only those that are "unreasonable." (*United States* v. *Rabinowitz* (1950) 339 U.S. 56, 60 [70 S.Ct. 430, 94 L.Ed. 653]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [6] [294 P.2d 6].) ■ And "[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." (*Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374]; accord, *United States* v. *Rabinowitz* (1950) *supra*, 339 U.S. 56, 63; *Harris* v. *United States* (1946) 331 U.S. 145, 150 [67 S.Ct. 1098, 91 L.Ed. 1399]; *People* v. *Denne* (1956) 141 Cal.App.2d 499, 506 [2] [297 P.2d 451].)

■ In the case at bench it would appear that the officer's clandestine observation of the then unknown occupants of the toilet booths by means of a pipe installed in the ceiling constituted an unreasonable search. Prior to uncapping the pipe on the night of the incidents at issue Officer Hetzel had no reasonable cause to arrest these petitioners. He had no grounds for believing or even suspecting that they had committed or were then committing any crime, or that they were

occupying the booths for anything other than a lawful purpose. Indeed, the officer testified that he had no prior knowledge of petitioners and had never seen them before looking through the pipe. According to the officer it was his practice "a lot of times" each week to climb upon the roof of the restroom, uncap the spypipe, and observe the occupants of the toilets below—i.e., *whoever they might be*. On each occasion, it will be remembered, the officer would remain on the roof "Until we make an arrest, or until we see that we can't make an arrest." In so doing he spied on innocent and guilty alike. Such a practice amounts to a general exploratory search conducted solely to find evidence of guilt, a practice condemned both by federal law (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 465 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775]; *United States* v. *Guido* (7 Cir. 1958) 251 F.2d 1, 4 [4], *cert. den.* 356 U.S. 950 [78 S.Ct. 915, 2 L.Ed.2d 843]; *United States* v. *Joseph* (E.D. Pa. 1959) 174 F.Supp. 539, 544 [6, 7], *affd.* 278 F.2d 504, *cert. den.* 364 U.S. 823 [81 S.Ct. 59, 5 L.Ed.2d 52]) and by the law of this state (*People* v. *Schaumloffel* (1959) 53 Cal.2d 96, 100-101 [1] [346 P.2d 393]; *People* v. *Mills* (1957) 148 Cal.App.2d 392, 399-401 [2] [306 P.2d 1005]; see *People* v. *Roberts* (1956) 47 Cal.2d 374, 378 [7]-379 [8] [303 P.2d 721]).

█ While a search is not unreasonable if made with the defendant's consent (*People* v. *Burke* (1956) 47 Cal.2d 45, 49 [1] [301 P.2d 241]; *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [1] [290 P.2d 852]), here petitioners obviously gave no actual consent to being spied upon through the pipe in the ceiling. Nor can it be said that because the restroom was open to use by the general public (1) petitioners "impliedly" gave their consent to such observation, or (2) consent was unnecessary because there was no search (cf. *People* v. *Rayson* (1961) 197 Cal.App.2d 33, 39 [8] [17 Cal.Rptr. 243] [shoeshine parlor]; *People* v. *Stone* (1961) 195 Cal.App.2d 282, 287-288 [4, 5] [15 Cal.Rptr. 737] [photocopying shop]; *People* v. *Roberts* (1960) 182 Cal.App.2d 431, 437 [5] [6 Cal. Rptr. 161] [gift shop]; *Thorp* v. *Department of Alcoholic Beverage Control* (1959) 175 Cal.App.2d 489, 492 [3] [346 P.2d 433] [barroom]). In each of the just cited cases the police officers entered upon premises *open to the general public* and while there saw, as any member of the public could also have seen, illegal objects or activities justifying further search or arrest. But in the case at bench Officer Hetzel climbed upon the roof of the restroom—which was certainly not a portion

of the premises that was open to the general public—and from that vantage point secretly observed activities of petitioners which no member of the public could have seen, as they were carried on within the confines of toilet booths each enclosed by three walls and a door.

For similar reasons the present case is not governed by the settled rule that "looking through a window does not constitute an unreasonable search" (*People* v. *Martin* (1955) 45 Cal.2d 755, 762 [13] [290 P.2d 855], and cases there cited). In a recent decision applying this rule it was stated more broadly that a police officer may look through "an open aperture in a person's home" without violating that person's constitutional rights (*People* v. *White* (1960) 180 Cal.App. 2d 99, 102 [2] [4 Cal.Rptr. 261]); and in two cases relied on by the People it was held that an officer may properly look through a tiny hole drilled in the door of a hotel room (*People* v. *Regalado* (1961) 193 Cal.App.2d 437, 442 [4] [14 Cal.Rptr. 217]) or an apartment (*People* v. *Ruiz* (1956) 146 Cal.App. 2d 630, 633 [1] [304 P.2d 175]), provided that the officer himself has not drilled the hole. We need not undertake at this time to either approve or disapprove the last-mentioned decisions, or to define the origin, location, or minimum diameter of the apertures through which police officers may look without making a search in violation of constitutional rights. On the facts before us it is undisputed that the activities of petitioners witnessed by Officer Hetzel were not "in plain sight" or "readily visible and accessible" (*People* v. *Roberts* (1956), *supra,* 47 Cal.2d 374, 379 [8]), but rather were hidden from all but the type of exploratory search here conducted.

The People stress the fact that Officer Hetzel was on the roof pursuant to a request by and with the consent of an agent of the owner of the amusement park. On this basis it is argued that the search was not unreasonable because the officer relied upon the apparent authority of that agent to consent to a search of the premises. The rule invoked is that laid down in *People* v. *Gorg* (1955) 45 Cal.2d 776, 783 [16-17] [291 P.2d 469], to the effect that a search is not unreasonable if made with the permission of one who, by virtue of his relationship to the defendant or other circumstances, the officers reasonably and in good faith believed had authority to consent to their entry.

The rule in the *Gorg* case has been applied in a variety

of contexts.[1]  But an analysis of the cases demonstrates that in each instance the officers had either (1) reasonable cause to believe that the defendant (or someone else on the premises) had committed a felony, or (2) information justifying their questioning the defendant (or someone else on the premises) with respect to his part in recently observed or reported criminal activity.  Thus, in a case where police officers had received information that two or three persons in a described car were stopping at gas stations in a certain area to take narcotics, it was held that the officers were entitled to believe that the attendant of a gas station in that area had authority to consent to their forcibly entering a restroom occupied by three men whose car, fitting the above-mentioned description, was seen by the officers to be parked outside of the station (*People* v. *Rodriguez* (1960) 180 Cal.App.2d 534, 536 [1] [4 Cal.Rptr. 456].)  Here, however, no such facts appear.  There is no showing that Officer Hetzel could reasonably have believed that the agent of the Pike Corporation had authority to consent to his spying, regularly and as a matter of course, upon each and every occupant of the toilet booths involved in the hope of eventually obtaining evidence of the commission of some crime.  (Cf. *People* v. *Roberts* (1956), *supra*, 47 Cal.2d 374, 377 [2-3] ; *People* v. *Carswell* (1957) 149 Cal.App.2d 395, 401 [7-8] [308 P.2d 852] ; *People* v. *Jennings* (1956) 142 Cal.App.2d 160, 169 [6] [298 P.2d 56].)

---

[1]E.g., where consent was given by the defendant's wife (*People* v. *Ingle* (1960) 53 Cal.2d 407, 416 [11] [2 Cal.Rptr. 14, 348 P.2d 577], and cases there cited; *People* v. *Megliorino* (1961) 192 Cal.App.2d 525, 527-528 [1] [13 Cal.Rptr. 635]; *People* v. *Hughes* (1960) 183 Cal.App.2d 107, 114-115 [9] [6 Cal.Rptr. 643]), by the defendant's father (*People* v. *Salcido* (1957) 154 Cal.App.2d 520, 522-523 [4] [316 P.2d 639] (disapproved on another point in *Priestly* v. *Superior Court* (1958) 50 Cal. 2d 812, 819 [6] [330 P.2d 39])), by the defendant's mother (*People* v. *Galle* (1957) 153 Cal.App.2d 88, 89-90 [1] [314 P.2d 58]; *People* v. *Cahan* (1957) 150 Cal.App.2d 786, 787-788 [1] [310 P.2d 661]), by the defendant's mistress (*People* v. *Smith* (1960) 183 Cal.App.2d 670, 671 [1] [6 Cal.Rptr. 866]; *People* v. *Howard* (1958) 166 Cal.App.2d 638, 651 [11-13] [334 P.2d 105]; *cf. People* v. *Triche* (1957) 148 Cal.App.2d 198, 203 [4]-204 [5] [306 P.2d 616]), or by some other person in apparent joint control of the premises (*People* v. *Kelly* (1961) 195 Cal. App.2d 669, 676 [2]-678 [3] [16 Cal.App.2d 177] [housemaster of campus dormitory]; *People* v. *Ransome* (1960) 180 Cal.App.2d 140, 145 [1]-146 [5] [4 Cal.Rptr. 347] [defendant's sister-in-law, cotenant of his apartment]; *People* v. *Herman* (1958) 163 Cal.App.2d 821, 826 [4] [329 P.2d 989] [co-occupant of defendant's house]; *People* v. *Misquez* (1957) 152 Cal.App.2d 471, 479-480 [8] [313 P.2d 206] [baby-sitter, furnished with key to defendant's apartment]; *People* v. *Silva* (1956) 140 Cal.App.2d 791, 794-795 [2] [295 P.2d 942] [brother of defendant's mistress, co-occupant of defendant's house]).

Certainly the premises of an amusement park held out to public use are subject to reasonable inspection. But license to make such an inspection of a toilet stall is not the equivalent of authority to invade the personal right of privacy of the person occupying the stall. Authority of police officers to spy on occupants of toilet booths—whether in an amusement park or a private home—will not be sustained on the theory that if they watch enough people long enough some *malum prohibitum* acts will eventually be discovered.

Let the peremptory writ of prohibition issue as prayed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

The petition of the respondent and the real party in interest for a rehearing was denied June 4, 1962.