[Crim. No. 1867.   Fourth Dist.   May 24, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS S. EARL, Defendant and Appellant.

---

Langford & Langford, Edgar G. Langford and J. Perry Langford for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—One Eldridge Rhodes and defendant-appellant Thomas S. Earl were charged with sex perversion, under Penal Code, section 288a. The jury trial was waived and both defendants were found guilty. The matter was referred to another department for sexual psychopathy proceedings. A motion for new trial was denied. Appellant was certified for examination as a sexual psychopath. A hearing was had and he was ordered placed temporarily with the Department of Mental Hygiene at Atascadero. Only appellant Earl appeals from the order denying a new trial, which appeal is allowable in such a proceeding. (Pen. Code, § 1237, subd. 2; Cal. Rules of Court, rule 31(a).*)

### FACTS

Two police officers, assigned to the vice squad, while in a police car, on July 1, 1962, had occasion to observe the two

*Formerly Rules on Appeal, rule 31(a).

defendants together about 6 p.m. at Fifth and Market Streets in San Diego. They had received complaints about two male Negroes, whose description they had, indicating that they had been propositioning servicemen in the area on a pretext of setting up an opportunity for prostitution with a female. Their *modus operandi* was to direct the servicemen to nearby hotels, one of which was the Service Hotel. Defendant Rhodes fit the description of one of the Negroes and defendant Earl was a white male. The officers parked their vehicle and observed appellant and the codefendant walking west on Market Street in the 400 block, and followed them approximately a block and a half to the Service Hotel, where the officers went to the hallway outside of room 214. The door was closed but the transom over the door was open. The officers remained outside of the closed door. They heard nosies resembling a bed squeaking and also "kissing type" noises coming from inside the room. The door to the room did not close tightly against the door frame and there was an opening caused thereby through which the officers could easily see. This aperture was just above the door knob and was approximately 1/2 inch to 2 inches in length and approximately 1/2 inch in width. There was also a gap in the molding. Officer Grimm looked into the room from this opening. He could see approximately one-half of the bed. Appellant and the codefendant were sitting on the bed directly in front of the door. They were embracing and kissing each other. Both were undressed.

Officer Beaudry then assisted Officer Grimm with a handhold and he looked in through the open transom over the door and saw the same thing. It had clear glass. Officer Grimm then went down to the first floor of the hotel where the office was located and obtained a stool from the manager. He identified himself as a police officer. He took the stool back to the area of room 214 and Officer Beaudry got on the stool and looked through the transom. Officer Grimm looked through the hole in the door and saw the acts constituting a violation of Penal Code, section 288a, being committed by appellant and the codefendant. The officers then forced the door and entered the room. Appellant and the codefendant were the only other occupants of the room. Both were placed under arrest at that time. The officers did not have a warrant for the arrest or search of either defendant.

The only issue presented is whether or not the evidence was obtained by means of an illegal search.

Counsel for appellant concedes that if the evidence was lawfully admissible over proper objection to an unlawful search, it left no doubt as to the guilt of appellant. The trial court ruled that the evidence was admissible, based on the decisions of *People* v. *Ruiz,* 146 Cal.App.2d 630 [304 P.2d 175], and *People* v. *Regalado,* 193 Cal.App.2d 437 [14 Cal.Rptr. 217].

According to the Supreme Court in *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288], the *Bielicki* case was not governed by the settled rule stated in those cases that: " . . . 'looking through a window does not constitute an unreasonable search' [citing *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] and cases therein cited] . . . that a police officer may look through 'an open aperture in a person's home' without violating that person's constitutional rights . . . ; and . . . that an officer may properly look through a tiny hole drilled in the door of a hotel room [citing *People* v. *Regalado, supra,* 193 Cal.App.2d 437, 442] or an apartment [citing *People* v. *Ruiz, supra,* 146 Cal.App. 2d 630, 633], provided that the officer himself has not drilled the hole."

The Supreme Court neither approved nor disapproved the holdings in those decisions. Counsel for appellant states that if these holdings are still "good law," the ruling of the trial court in the instant case was correct and the order appealed from must be affirmed. He argues that the holdings in those cases are incorrect and were, in effect, overruled by the subsequent decisions. The cases relied upon by appellant, the *Bielicki* and *Britt* (*Britt* v. *Superior Court,* 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817]) cases, involved sexual perversion, as in the present case. The evidence was obtained in the *Bielicki* and *Britt* cases by means of clandestine surveillance of booths or stalls in a public restroom. The surveillance in the *Bielicki* case involved a building in an amusement park housing pay toilets and was made from the roof of the building by means of a "spy pipe" installed in the ceiling of the booths below. The basis of the court's decision that evidence thus obtained was inadmissible was, as further explained in *Britt* v. *Superior Court, supra,* 58 Cal.2d 469, 471, that: "Prior to making that observation the officer had never seen either Bielicki or his codefendant and had no ground for believing that they were occupying the booths for anything other than a lawful purpose; rather, the observation was part of an apparently established police practice of secret surveillance of any and all occupants of the toilet booths."

They held that the evidence thus obtained was "the result of a general exploratory search conducted for the sole purpose of discovering evidence of guilt" and that, as such, it was violative of both federal and state constitutional guarantees.

The surveillance in the recent *Britt* case was of the men's restroom in a department store, and was made from a space between the ceiling of the men's restroom and the next floor above by means of two vents through which the officers stationed there could look down into the four stalls of the restroom. The factual differences between the instant case and the *Bielicki* and *Britt* cases are legally significant. In holding that the evidence obtained in the *Britt* case was inadmissible, the Supreme Court clearly pointed out that (1) the officer had never seen petitioner or the other man (in the activities in the restroom) before they entered their respective stalls; (2) he had not received any information concerning either of them from his fellow officers or any other source; (3) he had no grounds for believing or even suspecting that they were occupying the stalls for anything other than a lawful purpose; and (4) while the act committed in the *Britt* case might possibly have been visible, at least to some extent, had the officer been observing from a common-use portion of the restroom, the fact remains that he was not so stationed and the subject evidence was not so obtained. In the instant case, the officers had seen both participants before they even entered the hotel and had followed them to the hotel and to the room. The observation of appellant and codefendant began a block and a half away from the hotel, while the officers were still in their patrol car. While the officers had no information concerning either appellant or codefendant, codefendant did fit the description of one of two Negroes the officers were on the lookout for, whose *modus operandi* was to solicit money from servicemen on the pretext that a prostitute would be provided. Appellant was a young white male who could have been a recruit or a serviceman in civilian clothes on leave. After they were seen talking together, they walked together in the direction of the Service Hotel. █ The observing of that which is open and patent is not a search. (*People* v. *Edwards*, 142 Cal.App.2d 419 [298 P.2d 664]; *People* v. *West*, 144 Cal.App.2d 214 [300 P.2d 729].) Therefore, it cannot be said that there could be anything improper about following appellant and codefendant, even if there were no cause for suspicion. █ There was no offer of evidence that the hotel corridors were not open to anyone.

Therefore it is presumed that the officers were not trespassers. The officers did have grounds for believing that the room was occupied for something other than a lawful purpose before they looked into the room. Appellant and codefendant had not taken the precaution of closing the transom. Therefore, sounds from within the room were clearly audible. The officers had seen two men enter the room. They heard "kissing type" noises and the sound of a bed squeaking. They could reasonably infer from this that whatever was taking place was happening on the bed, and that the bed obviously was not being used for sleeping. It was thus logical and reasonable to believe that the room was being occupied for something "other than a lawful purpose." There was nothing they had not perceived at this point except the sight of what was taking place inside the room. Looking through the pre-existing aperture in the door, therefore, only confirmed what they had correctly understood by means of what they had plainly heard and could reasonably deduce. The officers did make their observations from a common-use corridor of the hotel. The point was made in the *Britt* case that such a vantage point was not used in that situation, and the inference is clear that the decision would have been influenced accordingly had such facts existed. We do not, in the instant case, have an observation which was part of an established police practice of secret surveillance of any and all occupants such as was the situation in both the *Bielicki* and *Britt* cases. Neither was the evidence obtained in this case the "result of a general exploratory search conducted for the sole purpose of discovering evidence of guilt." (*Britt* v. *Superior Court, supra,* 58 Cal.2d 469, 471.) No artificial or material aids were used to enable the officers to hear and see what went on inside the room. They could hear, obviously, because the transom was left open. Anyone in the corridor could have done the same. It is not suggested that listening to sounds emanating from the room was an invasion of privacy. Therefore, to take advantage of an existing crack or opening in the door to see what was taking place within the room was clearly reasonable. In this case, the officers did not obtain the evidence by spying on anyone who might occupy the rooms of the hotel for the purpose of discovering evidence of guilt. The initial surveillance by the officers was not of the rooms of the Service Hotel, but of the persons of appellant and codefendant prior to their entry into the room. Looking through the gap in the door in this instance was not an il-

legal search and evidence obtained thereby was admissible. The ruling of the court below was correct. (*People* v. *Young*, 214 Cal.App.2d 131 [29 Cal.Rptr. 492].) *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658] is factually distinguishable.

Order denying new trial affirmed.

Coughlin, J., and Brown (G.), J., concurred.

A petition for a rehearing was denied June 10, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 17, 1963.