[Crim. No. 7517.    Second Dist., Div. Three.    Feb. 11, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ADOLFO GUZMAN REGALADO, Defendant and Appellant.

David Daar, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—July 19, 1960, Adolfo Guzman Regalado was arrested for the possession of heroin, was convicted of the offense, he appealed from the judgment, the conviction was affirmed by this court (193 Cal.App.2d 437 [14 Cal.Rptr. 217]) and a hearing was denied by the Supreme Court. In June 1963, the United States Supreme Court granted certiorari and remanded the case "for further consideration in light of *Ker* v. *California, ante,* p. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726], and *McDonald* v. *United States,* 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153]." (374 U.S. 497 [83 S.Ct. 1875, 10 L.Ed.2d 1044].)

At the time of defendant's arrest he spat out a cellophane bindle and had another bindle on a table beside him, both of which contained heroin. At his trial defendant admitted having had possession of the narcotic. The only question in the case has been whether the methods used by the officers in the apprehension and arrest of defendant and seizing the contraband were in violation of defendant's rights under the Fourth Amendment and article I, section 19, California Constitution. No warrant of arrest or search warrant had been issued.

Two officers, observing defendant and three others enter a hotel, followed them in, ascertained from the manager the location of the room to which they went, took positions outside in the hallway, and one of the officers, in trying to look through the keyhole, saw a small round hole of the diameter of the lead in a lead pencil in the door panel about 3 feet from the floor. Peeking through the hole, Officer Walsh saw

defendant with an eye dropper and a needle in his hands and upon a table beside him an open bindle which was found to contain heroin. Believing defendant was about to give himself an injection of narcotics the officers forced open the door, arrested defendant and seized the paraphernalia and narcotic. Upon the trial, when the narcotic, the needle and the eye dropper were offered in evidence, they were received over defendant's objection that they had been seized unlawfully.

In *People* v. *Ruiz*, 146 Cal.App.2d 630 [304 P.2d 175], we affirmed a conviction of possession of narcotics where the evidence of the offense was obtained in essentially the same manner as in the present case. In *Ruiz*, the officers looked through a small hole in the door of an apartment, saw what appeared to be a transaction in narcotics, forced open the door and made an arrest. We stated that the action of the officer in looking through the hole would have been a clear violation of defendant's constitutional right if it had been shown that the officers had drilled the hole, but since they denied they had drilled it they were within the law in making use of the hole to spy upon the defendant. Our opinion in 193 Cal.App.2d 437 [14 Cal.Rptr. 217] followed our conclusions in *Ruiz*.

We do not find anything in the opinions of the United States Supreme Court in *Ker* or *McDonald* which touches the problem in the present case. In *Ker*, the principal question was whether the arrest was illegal because of the failure of the officers to identify themselves and demand admittance before making an entry. In *McDonald*, the holding was that after the officers in looking through a transom observed illegal activities they should have obtained a search warrant before forcing an entry into the room.

When our opinion in *Ruiz* and our former opinion in the present case were written, it had not been decided by the Supreme Court or any District Court of Appeal that spying through holes bored, or other openings made for that purpose, into private places is illegal and that evidence obtained in this manner may not be used to prove the commission of unlawful acts. Since that time the illegality of obtaining information in this manner, and its inadmissibility as evidence in a criminal trial, have been established by the Supreme Court. (*Bielicki* v. *Superior Court*, 57 Cal.2d 602 [21 Cal. Rptr. 552, 371 P.2d 288].)

The illegal act is the use of the openings to spy upon the

occupants in the room. Boring a hole to be used as a peephole merely furnishes the means for accomplishing the unlawful act. Anyone who uses it to spy into premises that are in private use commits a wrong against the persons spied upon. Tiny holes are not bored in hotel and rooming house doors to serve a legitimate purpose. Officer Walsh, the arresting officer, testified that in certain areas where crime was prevalent many small holes had been bored in doors of hotels and rooming houses by the police, but only after the officers had received permission from the managers of the different hotels. Walsh, himself, had made use of such holes, but had had nothing to do with making the hole in question.

There was no evidence that the officers had reason to believe that defendant had committed or was about to commit a crime. As the officers approached the room the men were in, they heard voices. There was no evidence as to what was spoken or even that the officers distinguished any remarks from inside the room. The only reason they had for believing a crime was being committed was what Walsh saw when he peeked through the hole in the door. Having no knowledge or information of unlawful activity except what Walsh had gained illegally, the officers had no legal cause whatever for forcing open the door and making an arrest. The officers knew, from their familiarity with the methods of the police in the district, that the hole was one of many which the police had bored for use in spying upon the inmates of rented rooms. The holes were maintained for the use of any and all officers while on spying missions. The factors in our case, which are determinative of the legality of the conduct of the officers, are essentially the same as in *Bielicki*. All the knowledge and information of the officers concerning illegal activities of the persons accused was obtained by means of an exploratory, and, hence, unreasonable and unlawful search. The existence of the devices used by the officers was unknown except to the officers and, but for their use, the actions of the victims could have been observed by no one outside the room.

To be sure, there was no direct evidence that the police had bored the hole in the door, but in view of the evidence of the practices of the police, and the absence of any other explanation, we regard it as an established fact that it was a peephole created and used by the police to spy upon the inmates of the room. Of course, it would be impossible for the victims in such cases to prove who made the hole, and it would be

most unjust to make them the victims of their own helplessness. But it is not material whether the police or someone else made it possible to look inside the room. The hole wronged no one until it was made use of, and if the hotel manager had made the hole and had shown it to the police, the use of it would have been as unlawful as if it had been made by the police.

Defendant's objection to receipt in evidence of the narcotic and paraphernalia seized by the officers should have been sustained, and if the evidence had been excluded no evidence sufficient to prove the corpus delicti would have remained.

The judgment is reversed.

Ford, J., and Files, J., concured.