[Crim. No. 2940. Fourth Dist., Div. One. July 25, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DANNY PAUL CACIOPPO, Defendant and Appellant.

Harry E. Weiss for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

LAZAR, J. pro tem.*—Defendant was convicted of violating Health and Safety Code, section 11530 (possession of marijuana) and appeals from a probation order deemed a final judgment (Pen. Code, § 1237). By stipulation, joined in by the defendant, the cause was submitted to the trial court without a jury on the transcript of the testimony given at the preliminary hearing.

FACTS

On September 24, 1966, in the City of Newport Beach, at about 11:30 p.m., Police Officer Johnson stopped a 1954 Volkswagen convertible driven by defendant, and in which there were two passengers, one in the right front seat, the other in the right rear seat. The vehicle was stopped for defective equipment; the left front headlamp was out, the rear license plate illumination absent, and the rear license plate was barely legible. Defendant emerged from the vehicle and walked rapidly toward Officer Johnson with two pieces of paper in his hand and at that time stated: "I know why you stopped me; my front headlights are out, and I was just cited by the California Highway Patrol."

Officer Johnson immediately walked to the right side of the vehicle and shined his light inside, checking to see who was inside, and observed the two male passengers, one of whom

---

*Assigned by the Chairman of the Judicial Council.

was nodding his head up and down. He then walked back to the defendant and talked to him while both were standing on the curb at a point between the Volkswagen and the police car. Pursuant to Officer Johnson's request, defendant produced his operator's license. In response to inquiry, defendant stated he owned the car. Officer Johnson asked defendant if he had evidence of registration and he replied, "Yeah, it's in the car."

Police Officer Johnson walked to the left side of the Volkswagen and peered in without being able to see any evidence of registration "posted on the steering column, nor on the sun visor, or at any other location within the interior of the vehicle from viewing the outside of the vehicle." The officer then employed his flashlight by shining it:

". . . into the interior of the car onto the steering post, onto the sun visor, *and then subsequently onto the floor of the vehicle, which would be in an area on the left side of the vehicle, directly below the driver's seat.* [Italics added.]

"Q. Now, when you shined your light on the floor, looking for the registration, what, if anything, did you observe?

"A. I observed five bright green tablets approximately less than one-half inch diameter, which were double scored and appeared to resemble a dangerous drug, Benzedrine."

Officer Johnson opened the door of the vehicle and examined the tablets more closely and observed also numerous marijuana-appearing seeds in the same location. The officer thereupon looked below the driver's seat and found two marijuana cigarettes.

Defendant was arrested and transported to jail in a police vehicle. Subsequently it was determined that the registration certificate for the defendant's vehicle was affixed to the left sun visor of the car. A search of the police vehicle in which defendant had been taken to jail revealed a third marijuana cigarette behind the seat at the place where defendant had been sitting.

## QUESTION

*Do the foregoing facts disclose an "unreasonable search" within the prohibition of the Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution?*

## ANSWER

■ We conclude the actions of the police officer did not constitute an unreasonable search.

In *People* v. *Carnes,* 173 Cal.App.2d 559, 566 [343 P.2d 626], police stopped an automobile after observation of ''suspicious'' movement late at night. Defendant driver and his passenger each stepped out of the vehicle and: ''After questioning him about his destination and the ownership of the car, Officer Bolander, while 'standing alongside their vehicle . . . looked into it and . . . observed . . . numerous tools, and a radio and gloves, and a flashlight.' These tools and articles could fairly be described as burglar's tools. The officer's action, in shining his flashlight inside the car while remaining outside, did not amount to an illegal search and when he observed various articles which could be described as burglar's tools inside the car he had 'reasonable cause' for placing appellant under arrest for 'suspicion of burglary.' Making those observations through a window of a car does not constitute an unreasonable search and seizure and the officers were entitled to act upon the information thus obtained. [Citations.] In *People* v. *Brooks,* 154 Cal.App.2d 631 [316 P.2d 435], the officer had stopped an automobile for a traffic violation and from the outside he saw cases of whiskey, similar to those that had been stolen, on the back seat. Thus, said this court, there was no unlawful search (p. 635).''

The foregoing decision parallels the case at bench except for the fact the police officer here testified he flashed his light ''into the interior of the car onto the steering post, onto the sun visor, and then subsequently onto the floor of the vehicle, which would be in an area on the left side of the vehicle, directly below the driver's seat'' *in furtherance of an intent to look for evidence of registration.* It is defendant's contention that the search for evidence of registration did not warrant directing the flashlight beam toward the floor of the car in front of the driver's seat and that such lack of justification thereby rendered the search unreasonable.

As pointed out in *Bielicki* v. *Superior Court,* 57 Cal.2d 602, at p. 605 [21 Cal.Rptr. 552, 371 P.2d 288]: ''The constitutional guarantees, of course, prohibit not all searches but only those that are 'unreasonable.' [Citations.] And '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' [Citations.]''

We are of the opinion that the circumstances were not such that the investigating officer's conduct was unreasonable as a matter of law. The actions to be taken in the situation with which the officer was confronted are not to be confined within

the formalism of a minuet, nor the illumination of his flashlight to the needle-like intensity of a laser beam.

Vehicle Code section 4454, as it then read, required the placement and maintenance of the registration certificate so that it be "plainly visible and legible from outside the vehicle." It may be noted that counsel representing defendant at trial did not pursue his cross-examination of the police officer to establish at what place, or why, in the area of the floor the officer thought he might find the certificate of registration. It is not too far-fetched to contemplate that a registration placed upon a sun visor could fall to the floor and that such thought, perhaps subconsciously, would flash through the mind of an investigator upon failing to observe the certificate in one of its more likely locations, i.e., the sun visor or steering post.

Defendant urges in effect two specific propositions: first, the police officer engaged in a search which under the circumstances was unreasonable; second, the police officer was not entitled to invade a privacy resulting from the natural phenomenon of darkness by overcoming the darkness with the rays of his flashlight.

Review of the facts of the case should readily controvert both propositions, the latter of which defendant urges more with literary than legal argument.

Late at night the police officer observed a motor vehicle with legally defective equipment being operated in a populous community. One of the passengers was nodding his head up and down in a manner to attract the attention of the police officer. The driver emerged from the vehicle and walked rapidly toward the officer and took the attitude of "protagonist" with respect to being stopped, in the language quoted earlier. If the officer entertained any suspicion or uncertainty about the bona fides of the driver and the vehicle at this point, was he not under a duty to allay it if it could be done legally? We apprehend that he was.

A legal and logical procedure was available—that of checking first the operator's license and then the registration. Vehicle Code, section 4454, as then in effect provided for display of the certificate of registration; the checking of the registration afforded an innocuous step in support of defendant's status. While Vehicle Code section 2804 in terms relates only to California Highway Patrol Officers, we are unaware of any authority which precludes a city police officer from making such investigation incident to stopping a vehicle for legal

reasons other than to check the registration. In short, Officer Johnson was making a valid investigation in a valid manner (*People* v. *Willard*, 238 Cal.App.2d 292, 297 [47 Cal.Rptr. 734]; *People* v. *Carnes, supra,* 173 Cal.App.2d 559, 565-566; *People* v. *Wright,* 153 Cal.App.2d 35, 39 [313 P.2d 868]) and incidentally thereto observed that which was in plain view (*People* v. *Grubb,* 63 Cal.2d 614, 618 [47 Cal.Rptr. 772, 408 P.2d 100]; *People* v. *Galceran,* 178 Cal.App.2d 312 [2 Cal. Rptr. 901]). *People* v. *Franklin,* 261 Cal.App.2d 703 [68 Cal.Rptr. 231], is distinguishable upon the basis the city police officer without legal authority stopped an out-of-state vehicle for the purpose of checking its registration. *People* v. *Gonzales,* 356 Mich. 247 [97 N.W.2d 16], and *People* v. *Lee,* 371 Mich. 563 [124 N.W.2d 736], may also be distinguished upon the basis that the discovery of the contraband there in question was held to be in no sense legally incident to the cause for which the vehicle had been stopped and accordingly the investigating officer's observation or presence in the vehicle was unreasonable.

Defendant seeks refuge in what he deems a form of privacy, consequential to the phenomenon of night, equitable with that attaching to man's castle, be it home or vehicle; and by force of law impervious to the devices of artificial illumination. Such an argument fails to acknowledge that life goes on during the whole of the 24-hour cycle comprised of nocturnal and diurnal episodes. In the realm of investigation, search and seizure, the restrictions against unlawful exercise thereof relate to the reasons and conditions upon which the law enforcement officers' conduct is premised and not to the turning of the earth upon its axis or in its orbit.

Defendant contends that darkness creates its own legal sanctuary and tells us

"Now black and deep the night begins to fall

A shade immense! Sunk in the quenching gloom,

Magnificent and vast, are heaven and earth.

Order confounded lies; all beauty void,

Distinction lost, and gay variety

One universal blot!" (Thompson, The Seasons, Autumn, L. 113)

And more acceptably .

"Tender is the Night. . . . .

I cannot see what flowers are at thy feet,

Nor what soft incense hangs upon

The boughs,

But, in embalmed darkness, guess each Sweet.'' (Keats, Ode to a Nightingale)

In the harsh light of reality we respond:

''Oh, treacherous night! thou lendest thy ready veil to every treason, and teeming mischiefs thrive beneath thy shade.'' (A. Hill)

and

''Under thy mantle black, there hidden lie, light-shunning theft, and traitorous intent, abhorred bloodshed, and vile felony, shameful deceit, and danger imminent, foul, horror, and eke hellish detriment.''—Spenser

Perforce '' [t]his night methinks is but the daylight sick.'' (The Merchant of Venice, V.C. 1597)

The judgment of conviction is affirmed.

Coughlin, Acting P. J., and Whelan, J., concurred.

A petition for a rehearing was denied August 20, 1968.